CADENHEAD *v.* GOODMAN.[*]

(Division A. Oct. 10, 1927.)

[114 So. 124. No. 26577.]

ANIMALS. *Person shooting bulls, not engaged in act of viciousness or violence, held liable in damages.*

Where person in response to call from woman, who had been chased by bulls, shot such bulls killing one and maiming the other at a time when they were not engaged in any act of viciousness or violence, he was liable in damages therefor, since one may not shoot a valuable domestic animal in punishment of wrong already committed or out of spirit of vengeance.

---

[*]Corpus Juris-Cyc. References: Animals, 3CJ, p. 151, n. 3, 5, 6 New; p. 162, n. 16.

APPEAL from circuit court of Marshall county.
HON. T. E. PEGRAM, Judge.

Action by G. S. Goodman against J. L. Cadenhead. Judgment for plaintiff, and defendant appeals. Affirmed.

*Smith & Smith,* for appellant.

Is it the law of this state that a man may not drive from his premises dangerous and vicious animals trespassing thereon? We have not found it so after an examination of the authorities, and believe that our position is sound in saying that a man has this right. In the instruction given this right is denied defendant absolutely, and the jury is told that if the bulls injured themselves after becoming frightened by the shooting in the air by defendant, without regard to his negligence in doing so, and without regard to his negligence in doing so, and without regard to the amount of force he might use to drive the bulls away, provided only that such shooting was the proximate cause of the injury, they must find for the plaintiff.

The supreme court of Mississippi, in *Norfleet v. Sigman,* 41 Miss. 631, said: "In a case where the evidence approximates an equipoise and is conflicting, the court should expound the rules of law applicable to it with the utmost caution, precision and clearness, avoiding as far as practicable any and all allusions to matters not involved in the issue; and if in such a case an erroneous instruction be given, or one which, though abstractly correct, is irrelevant to the issue, it will be presumed to have had its effect in procuring the verdict, which will for that reason be set aside."

Instructions must be applicable to the evidence and pertinent to the questions raised by it, and if not, they should be refused, however correct they may be as abstract propositions of law; and if inapplicable and impertinent, the giving of them will be error. (1844) *O'Reilly v. Hendricks,* 2 S. & M. 388; (1848) *Payne v. Greene,*

10 S. & M. 507; (1850) *Wiggins* v. *McGimpsey*, 13 S. & M. 532; (1853) *Hyde* v. *Finely*, 26 Miss. 468; (1856) *Dennis* v. *McLaurin*, 31 Miss. 606; (1857) *Wright* v. *Clark*, 34 Miss. 16; (1859) *Fairly* v. *Fairly*, 38 Miss. 280.; (1860) *Herndon* v. *Bryant*, 39 Miss. 335; (1860) *Lombard* v. *Martin*, 39 Miss. 147; (1869) *New Orleans, etc., R. Co.* v. *Statham*, 42 Miss. 607, 97 Am. Dec. 478n.

Where there is no evidence substantiating a theory of recovery, an instruction thereon is erroneous. *Western Union Tel. Co.* v. *Robertson*, 109 Miss. 775, 69 So. 680. It seems to be a difficult situation in which to place a man of ordinary capabilities, and we submit that the instruction which charges the jury that the appellant could not shoot the bulls in this case "unless in fear of death, great bodily harm, or that property equal to or more than their value" was being destroyed at the time of the shooting, constitutes fatal error; we think if the relative value of the property and the vicious animal enters the case at all, it simply is that a man may not wantonly kill an animal which is destroying property having little or no value. And there is no issue on this destruction of property proposition in this case.

The keeping of these vicious animals by the appellee with knowledge of their viciousness is the initial impulse, original negligence, the inexcusable menace, which was the proximate cause leading up to the final culmination. It is the policy of the law in this state to protect the public under such circumstances, and to give human beings the benefits of doubts when dealing with unreasoning brutes. For instance, if one of these bulls had killed either Mrs. Harris, or her son, or Mr. Cadenhead, the appellee would have been guilty of manslaughter. Sec. 970 of Hemingway's Code, section 1240 of the Code of 1906. "If the owner of a mischievous animal, knowing its propensity, willfully suffers it to go at large, or shall keep it without ordinary care, and such animal while so at large, or not confined, kills any human being who shall

have taken reasonable precautions to avoid the animal, such owner shall be guilty of manslaughter.''

Surely, an examination of this record, reveals from appellee's own witness, the man who had charge of these bulls, that some strands of wire around the lot where the bulls were kept by appellee, were down. This shows appellee did not keep them safely or with ordinary care; and the evidence of an overwhelmnig degree that the animals had a reputation of viciousness in the community where the owner lived was sufficient to authorize the jury to infer that the owner knew of such vicious dispositions.

In a criminal case in this state, *Griffy* v. *State,* 79 So. 3, this Honorable Court held: ''In a prosecution for wilfully, unlawfully and mischievously killing a hog belonging to another, where it appeared that accused had repeatedly tried to keep the hog out of his potato patch, that he did not know who owned it, and killed it solely to prevent damage to his crop, finding that the hog was killed maliciously or mischievously was not warranted, and a peremptory instruction should have been given for defendant.''

In that case the court said nothing about the value of the property destroyed being required to equal or exceed the value of the animal *damage feasant.* In this case, that element was injected by the instructions asked for and granted to appellee, and would seem to have no place in the law of this state in the language used in those instructions.

The appellant proved we think clearly that these bulls were of a vicious propensity, but we need not have gone that far, and need only have proven that they were of a mischievous propensity, which has been defined as a propensity from which injury is the natural result and may be manifested otherwise than in anger. *Evans* v. *McDermott,* 49 N. J. 163, 60 Am. Rep. 602.

It is not material that the animal was not cross or savage but acted in good nature and playfulness, as the intent of the animal is not material where its actions are

hurtful. R. C. L., page 1091; *Crawley* v. *Gronnell,* 73 Vt. 45, 55 L. R. A. 876.

The *scienter* necessary to support an action, if the appellant was suing the appellee in this case, for the vicious act of these animals, may be imputed to the owner from the knowledge of his wife, brother, or son, to whose custody the animal was committed. *Muller* v. *McKisson,* 73 N. Y. 195; *Boler* v. *Sorgenfrei,* 86 N. Y. S. 180; *Ayres* v. *McCaughtry,* 117 Pac. 1088, 37 L. R. A. (N. S.) 865. And the gist of the action would be not the manner of keeping them, but keeping them with knowledge of these vicious qualities. *Hammond* v. *Melting,* 42 Ill. App. 186.

Our own state has passed on the question of what knowledge and information an owner must have as to a vicious and mischievous animal in the case of *Stewart* v. *Gwinn,* 126 Miss. 806, 1 So. 659. Therefore, it follows that instruction No. 4 granted appellee is fatally erroneous and calculated to mislead the jury.

Compare the language of that instruction with the finding of our court in the case of *Stewart* v. *Gwinn,* and with the language of the Illinois court in the case of *Howard* v. *Melton,* and with the text of 1 Ruling Case Law, page 1091.

It is a well-known principal of law that wild animals noted for dangerous propensities may be killed at a time when they are not engaged actually in those propensities. *Throne* v. *Mead,* 122 Mich. 273, 80 N. W. 1080, 80 Am. St. R. 568; C. J., par. 516, page 160. See, also, *Brown* v. *Carpenter,* 26 Vt. 638, 62 Am. D. 175.

*Belk & Belk,* for appellee.

The jury was well warranted, under the facts in this case, to render a verdict in favor of the plaintiff below, appellee here. This case is largely a question of fact which was passed upon by the jury. We do not think that this court will or should disturb a verdict, which, from the record as a whole appears to be righteous and

not a miscarriage of justice.  Rule 11, Revised Rules of the Supreme Court, 101 Miss. 906.

The defendant, appellant here, testified that he shot the bulls to "shoo" them away, and that he shot them when they were not making any attempt to bother him, and not destroying any property, and the old bull was actually running away from him, away from the enclosure of Mrs. Harris and going toward the railroad.  Now if the bulls were not bothering him, were not even making any attempt to bother him, were not destroying any property, and actually running away from him, what was his motive in shooting at, and actually hitting the bull, Old Jake?  Was it, as he says, an attempt to "shoo" them away, or was it, as plaintiff alleged, a wanton, wilful and intentional shooting?  That was a question for the jury to pass upon, and the jury found from his own testimony that he wilfully shot an animal which was using his best efforts to get away to keep from getting killed.

"The owner of an animal, either domestic or wild, but reclaimed, has an action for damages against one who either intentionally or negligently injures, maims, or kills said animal."  1 Cyc. Law, page 574; 1 Am. Digest 1897 to 1906, page 766.  It is our contention that Mr. Cadenhead intentionally shot the two animals in question and is liable to Mrs. Goodman for so doing.

The test in this case is "reasonable necessity, and the question whether or not such necessity exists, is one for the jury." 1 R. C. L., page 1138, Ann. Cas. 193 Note.  "A person may kill an animal when necessary for the preservation of property or other animals, but this right can only be exercised for the prevention of an injury which the trespassing animal is in the act of committing, and not to revenge an injury already done."  1 R. C. L., page 1138, 68 So. 559, 562, 2 Eng. Rul. Cas. 111 Note.

We do not think counsel's contentions with reference to the instructions, etc., are well taken for when the record is taken as a whole, there was no misdirection of

the jury and not a miscarriage of justice. Rule 11, Revised Rules of Supreme Court, 101 Miss. 906.

Argued orally by *L. A. Smith,* for appellant, and by *F. M. Belk,* for appellee.

McGOWEN, J., delivered the opinion of the court

G. S. Goodman, plaintiff in the court below, appellee here, sued J. L. Cadenhead for damages for unlawfully, willfully, and wantonly shooting with a firearm two bulls belonging to plaintiff, killing one and so maiming the other as to render it useless as a breeding animal, said damages amounting to one hundred ninety-five dollars.

Although written pleading is not required in a justice of the peace court, there was much pleading in this case which we deem unnecessary to state.

The justice of the peace entered judgment for defendant. The plaintiff appealed, and in the circuit court additional written pleadings were filed which we deem unnecessary to set forth. After issue joined and the taking of much proof, the jury returned a verdict in favor of plaintiff for seventy-five dollars, and judgment for said amount was entered.

There was much testimony tending to show that one of the bulls, "Old Jake," the older of the two bulls, was vicious. One of the witnesses, Bunk Jones, testified that Old Jake pursued him on a certain occasion, and he was forced to climb a cedar tree, where the bull kept him lodged for several hours.

There was much testimony that "Young Jake" had ever been disposed to disport himself in a rude, angry, and threatening manner; that on a particular day, Mrs. Harris, who had some cows, discovered these two bulls coming toward her and her children, and, according to her testimony, the bulls chased her, and she barely managed to escape them by closing the door of her residence. The bulls continued to chase about the place, having

jumped out of the pasture on their side in order to consort with the Harris cows, which were pastured near by. Mrs. Harris screamed for help, and, her husband being busy with accounts at the store, J. L. Cadenhead, appellant here, went to the house, and he says that when he went to the scene the bulls were chasing the Harris cows; that he went in the house and got a shotgun loaded with No. 6 shot, shot in the air to shoo the bulls away, and, according to his testimony, the old bull "shooed." He testified that while the old bull was going away from him, apparently in perfect disorder, completely routed, that the young bull jumped the fence and fell in a pile of plows and old debris which had been piled up, and that he shot at old Jake. We quote a part of his testimony:

"Q. They were not making any attempt to bother you? A. No, sir; not a bit in the world. . . .

"Q. At the time you shot the bull was he advancing towards you? A. No; going away from me.

"Q. And not destroying any property? A. No, sir."

He testified that he did not know whether he hit Old Jake or not.

The proof further showed that Old Jake was wounded in such part of his anatomy, and to such extent, as to destroy his value as a breeding animal, and that Old Jake went to the slaughterhouse to be consumed as beef. There was some evidence that some flower pots and stands were knocked over.

Much testimony was offered to show that the bulls were fence jumpers, and vicious, especially Old Jake. On the other hand, plaintiff's wife and boy swore that the bulls were gentle and amicable, and that the boy rode the bulls and played with them. So there was a conflict in testimony, but none as to the conduct of the bulls at the time they chased Mrs. Harris into her residence.

Appellant, Cadenhead, first insisted that the case should be reversed because the circuit court was without jurisdiction, for the reason that, at one time, on cross-examination, appellee said his two bulls were worth

two hundred fifty dollars, but, when a motion was made to dismiss the case, the court developed that plaintiff's claim for damages was one hundred dollars for each bull, Young Jake having died subsequent to the shooting, and Old Jake having been "disqualified" as a breeder and sold for beef; and the jury's verdict was for seventy-five dollars.

We do not think there is any merit in appellant's contention that appellee, plaintiff in the court below, was minimizing his damages in order to confer jurisdiction on a court of a justice of the peace.

On this testimony of Cadenhead, we cannot see that there is any reversible error in the case, because the court submitted the case to a jury, and, on the testimony of the defendant himself, at the time he shot at Old Jake, the bull was not engaged in any act of viciousness or violence, or doing any damage to person or property. The two bulls had severely frightened Mrs. Harris, but one may not shoot a valuable domestic animal in punishment of a wrong or damage already committed by the animal, or out of a spirit of vengeance, after the animal has trespassed, even though he might have had the right to shoot the offending animal while engaged in the act.

The proof showed that the plaintiff's damages, on account of Old Jake, were one hundred dollars. The jury's verdict was for seventy-five dollars. A peremptory instruction should have been given the jury to find for the plaintiff in such damages as were sustained by him in the shooting of Old Jake.

We think it would be unprofitable to discuss the instructions complained of in this case, as the verdict is warranted, leaving out of view the question of damages as to the young bull.

*Affirmed.*