**CITY OF GARLAND et al., Appellants,**

v.

**Talmadge WHITE et al., Appellees.**

No. 3790.

Court of Civil Appeals of Texas.

Eastland.

May 3, 1963.

Rehearing Denied May 24, 1963.

Wyatt W. Lipscomb, City Atty., Garland, for appellants.

Esir Tobolowsky, Dallas, for appellees.

COLLINGS, Justice.

Talmadge White and his mother, Mrs. Madie White, a feme sole, brought this suit against the City of Garland, a municipal corporation and Danny Flannigan, Bill Mize, and Barry Brewer, who were policemen in said city, seeking to recover for damages to their property and persons including physical pain and mental anguish. Plaintiffs alleged that Mrs. White owned a home in Garland and that her son, Talmadge White, resided with her; that Talmadge White owned a pedigreed, registered, three year old male boxer dog; that the named police officer defendants went on the property of plaintiffs without permission as trespassers, without notice or warning and in violation of an ordinance of the city of Garland wilfully and wantonly shot and killed Talmadge White's boxer dog alleged to have been a household pet, and damaged Mrs. White's house; that the shots fired by defendants came within three or four feet of where plaintiffs were sitting in their home. The defendants answered by general denial, and specifically alleged that plaintiffs' large boxer dog was vicious and aggressive and had attempted to attack several residents of the city of Garland; that the defendant police officers were called about the situation and acted in line of their duty for the purpose of protecting the lives of the citizens of the city.

The court found that the city of Garland was as a matter of law not liable and sustained its motion for a summary judgment. The remaining portion of the case was tried before a jury which found that the reasonable cash value of the boxer dog prior to the time it was killed, was $300.00; that $200.00

**14**

would compensate Talmadge White for physical pain and mental anguish suffered by him because of said action of defendant police officers; that plaintiffs wilfully permitted the dog to run at large on the occasion and that the failure of plaintiffs to have the dog confined to their premises was negligence and a proximate cause of the occurrence in question. The court granted plaintiffs' motion to disregard the jury findings that they were guilty of negligence proximately causing such occurrence and entered judgment for Talmadge White for his damages in the sum of $500.00 and for Mrs. Madie White for $75.00, the stipulated damages to her house. Flannigan, Mize and Brewer have appealed.

The evidence shows that Talmadge White has lived in the City of Garland since 1948, with his mother, Mrs. Madie White, who had the house built in 1946 and has lived there since. White is a teacher at the W. W. Samuell High School in the City of Dallas, where he has taught for ten years. He was the owner of the three year old male boxer dog in question. The evidence shows that the dog was registered, pedigreed, and had been with White since it was eleven days old. The evidence indicated that the dog weighed anywhere from 48 to 70 pounds. White testified that the most the dog ever weighed was 48 pounds; that it had been raised in the White house by hand feeding on a bottle and was a pet. White and several witnesses testified that the dog had never shown any vicious tendencies; that it was a pet, was gentle and would never snarl or snap at anybody. However, there was testimony by other witnesses which indicated to the contrary.

On April 1, 1961, officer Mize received a call from Mrs. Vernon Poor at about 11:00 o'clock a. m. concerning the dog and the officer went to her house to investigate. Mrs. Poor testified that the dog came to her yard and charged at her three or four times; that she froze in her tracks; that the dog did not bite her and did not scratch her, and that the only thing he did was to charge at her so that his front feet hit hers

and that the impact of the dog's feet on hers bruised and discolored her foot. She showed the officer a large blue spot on her right ankle. She stated that there was nothing to have kept the dog from biting her if he had wanted to. She stated that she did not see a doctor and did not need medical attention. Officer Mize testified that he found the dog in the front yard of a house behind and to the east of the Poor residence; that some people were standing on the porch of the house but the dog was making no effort to go toward them. He further testified, however, that the dog thereafter made a lunge at two teen-agers and that he, Mize, jerked his squad car into low gear and drove the car between the dog and the teen-agers. Mize then called Officer Brewer, who met him at the police station and they made an effort to get the dog catcher's equipment and to find the pound truck but were unable to find such equipment or the poundmaster. Mize and Brewer then went back to Belmont Street and again saw the dog. He was standing by a fence between two houses. The dog was not doing anything. He growled but did not charge at them. The defendant, officer Flannigan, then came to the vicinity in a separate police car. All three officers got out of their cars and approached the dog. According to their testimony the closest they came to the dog was between ten and twenty feet. They stated that the dog then made a lunge at Flannigan, but never got closer to Flannigan than about ten feet. At that time Flannigan drew his pistol and fired two shots at the dog. The dog ran about 4½ blocks to the home of plaintiffs and jumped in Talmadge White's car which was in the driveway with all four doors open. There was no one in the vicinity at the time except officers Mize and Brewer who had followed the dog when it ran home after being shot at by Flannigan. Later several other persons did appear. Flannigan did not follow the dog but went to the home of a Mr. Carter and borrowed a shotgun. After Flannigan had obtained the shotgun he was called on the radio by

officers Mize and Brewer, who told him where the dog was at that time. A few minutes later Flannigan arrived at the White home with the shotgun. Flannigan admitted that Mize and Brewer were waiting in front of the White home and that their purpose in waiting, as well as his purpose in coming with the shotgun, was to kill the dog. Flannigan stated that when he arrived at the White home the dog was in a car, was not growling or barking or doing any harm or damage to any one. Appellant police officers then got out of their squad cars and went on to the White property, advancing toward the dog. They did not attempt to inquire about the dog at the White home. The evidence shows that when appellants advanced toward the dog the dog got out of the car and ran into the White garage getting as far away from the officers as he could. The officers made no effort to pull down the overhead door on the garage or to catch the dog in any way. The evidence shows that the dog was standing in the garage on the step leading into the White house from the garage when appellant Flannigan fired two shots and killed it with the shotgun. The evidence is undisputed that at the time the shots were fired the dog was not making any motion to come toward either of the police officers or toward anyone else; that the dog had not barked or snarled at them from the time the officers got out of their cars until it was killed.

The evidence further shows that the shotgun blast, not only killed the dog, but made several small holes in the door which opened from the house into the garage. Appellees Talmadge White and his mother were having lunch at the time and sitting in the dining room of their home. The dining room juts off behind the garage and adjoins Mrs. White's bedroom. The bedroom is directly behind the garage and the door from the garage into the house led into Mrs. White's bedroom. This was the door which the dog was apparently trying to get into at the time it was shot. Appellees testified that some of the bullets hit the door and the side of the garage wall very near to where Talmadge White and his mother were eating.

The evidence is undisputed that appellants made no effort to notify the Whites that they were in the vicinity or intended to take any action concerning the dog; that the Whites did not give appellants permission to come onto their property. Appellants admitted that they did not have such permission.

It was stipulated that the cost of repairing the White's home because of the shots from the gun amounted to $75.00. White testified that the value of his boxer dog, prior to the time it was killed was $300.00, and the jury so found. White further testified that he became nervous as a result of the action of the defendants in killing his dog under the circumstances related; that he missed time from school and that his school work was affected as a result of appellants' action. In answer to special issues submitted the jury awarded White $200.00 for physical pain and mental anguish.

Appellants urge numerous points in which they contend, in effect, that the court erred in entering judgment against them; that as a matter of law they are not liable because they were policemen acting in the performance of their official duty; that as such they were exempt from civil liability; that a municipality has within its police powers the authority to control and regulate all animals within its corporate limits for the safety and welfare of its citizens, and that its officers have the right to go anywhere in the city to enforce its ordinances relating thereto, including the entry upon private property; that appellants had the right and duty to pursue an animal running at large and making a nuisance of itself by charging and attacking inhabitants of the city in violation of the ordinances of the city and to continue such a pursuit across private property and to use all force reasonably necessary to stop the violation including the killing of the dog. We cannot agree with appellants' contention that the

court erred in entering the judgment which it did in this case.

Dogs are property and an owner of a dog may recover for its wrongful injury or killing. Although a vicious dog which is a public nuisance may be lawfully killed when it is roaming at large and endangering the safety of persons and property, the general rule is that to justify the killing of a dog in defense of person or property the danger must be imminent and a real or apparent necessity must exist therefor unless there is statutory authority to kill the dog under the circumstances shown. See 3 C.J.S. Animals §§ 213–219, pages 1330 to 1336.

In the instant case no statute or ordinance permitted the killing of the dog under the circumstances shown. The ordinance of the city of Garland did make it a violation for the owner of any animal to permit such creature to run at large within the city or to go upon the premises owned or in possession of any other person within the city. The ordinance provided that any such animal running at large in violation of the ordinance should be impounded in the city pound by the poundmaster or any police officer. There was a further provision that any such animal impounded under any section of the ordinance might be killed by the poundmaster or the police of the city after it had been impounded for a period of three days. There was, however, no provision of the ordinance authorizing the killing of an animal under the circumstances shown in the evidence in this case.

The dog in question had according to the evidence been running at large. However, just prior to the time it was killed, it was not running at large and was not engaged in any act of violence or viciousness. On the contrary, the dog at that time was sitting quietly in Talmadge White's car which was parked in the driveway on the appellees' property. When appellant police officers entered upon the White property with the admitted intent to kill the dog it left the car and went into the back end of the garage to escape them. Under the circumstances the police officers had no right to go upon appellees' property and to kill the dog or to damage appellees' house by the discharging of the shotgun as shown by the evidence. The court did not err in so holding.

The facts in Cadenhead v. Goodman, 148 Miss. 88, 114 So. 124, are similar in many respects to the facts of the instant case. In that case a person was called by a woman who had been chased by two bulls and responded to the call. He shot the bulls, killing one and maiming the other at a time when the bulls were not engaged in any act of violence or viciousness. It was held that the person shooting the bulls under these circumstances was liable therefor and that the owner was entitled to recover his damages. In so holding the court stated as follows:

"* * * on the testimony of the defendant himself, at the time he shot at Old Jake (one of the bulls), the bull was not engaged in any act of viciousness or violence, or doing any damage to person or property. The two bulls had severely frightened Mrs. Harris, but one may not shoot a valuable domestic animal in punishment of a wrong or damage already committed by the animal, or out of a spirit of vengeance, after the animal has trespassed, even though he might have had the right to shoot the offending animal while engaged in the act."

Appellants were trespassers upon the land of appellees in that they made entry thereon without appellees' consent, without right and authority under the law and with the intent to commit an unlawful act. They went upon the premises with the admitted intent to, and did commit an act which was unlawful and injurious to appellees. A police officer, even though engaged in the performance of a public duty, is civilly liable when he acts in a wrongful and illegal manner and is guilty of a trespass. 4 McQuillin on Municipal Corpora-

tion page 148; 33 Tex.Jur. 739; Eubanks v. Wood, 304 S.W.2d 567. Appellants were therefore liable for their trespass and wrongful actions. 41-A Tex.Jur. pages 464, 466 and 473.

 Appellants further contend that the court erred in entering judgment for appellees because as found by the jury, appellees were guilty of negligence proximately causing the occurrence in question. We cannot agree with this contention. The act of negligence on the part of appellees complained of by appellants was the failure to keep the dog confined to its premises. The authority given to police officers in case an animal is permitted to run at large in violation of the ordinance was to impound such animal and not to kill it until such animal had been impounded for a period of three days. In any event the alleged negligence of appellees as found by the jury was as a matter of law not a proximate cause of the death of the dog under the circumstances shown by the evidence. East Texas Motor Freight Lines v. Loftis, 148 Tex. 242, 223 S.W.2d 613; Genell, Inc. v. Flynn, 358 S.W.2d 543 (Tex.Sup.Ct.); Dallas Railway & Terminal Co. v. Hendrix, Tex.Civ. App., 261 S.W.2d 610, 612; Hodges Tire Company v. Kemp, Tex.Civ.App., 334 S.W.2d 627, 629; Helms v. Harris, Tex. Civ.App., 281 S.W.2d 770 (Writ Ref. N.R.E.). The action of appellants in killing the dog was admittedly intentional. Contributory negligence is not a defense to an intentional act. Galveston H. & S. A. Ry. Co. v. Zantzinger, 92 Tex. 365, 48 S.W. 563, 44 L.R.A. 553; Moore v. El Paso Chamber of Commerce, Tex.Civ.App., 220 S.W.2d 327 (Ref. N.R.E.); 30-B Tex.Jur. p. 301.

Appellants' 11th point complains of the action of the court in giving judgment to Talmadge White in the amount of $200.00 for mental pain and suffering. It is contended that the finding of the jury and the judgment in this respect are not supported by the evidence; that the evidence shows only worry, vexation, disappointment, anger and resentment and that the law does not authorize recovery for such condition. Actually, the evidence indicates that White also became very nervous as a result of the action of appellants. White testified that he became nervous, frustrated and that it affected his school work causing him to miss time from school. There was other evidence to the effect that Talmadge White was nervous and upset as a result of appellants' action. Appellants' 11th point is overruled. Allison v. Simmons, Tex.Civ. App., 306 S.W.2d 206, (Ref. N.R.E.); Norwood Bldg. v. Jackson, Tex.Civ.App., 175 S.W.2d 262, (Ref. W.M.).

We have considered all points urged by appellants and find no merit therein.

The judgment is affirmed.