# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00354-CV

**Petco Animal Supplies, Inc., Appellant**

**v.**

**Carol Schuster, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
## NO. GN301019, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## O P I N I O N

In this case, we consider the types of damages that Texans may recover for the loss of a pet dog.[1] Appellee, Carol Schuster, sued appellant, Petco Animal Supplies, Inc. (Petco) after her miniature schnauzer, Licorice, was run over by traffic after escaping from a Petco groomer. Schuster took a default judgment, and the trial court awarded damages, including Schuster's replacement costs for Licorice; her out-of-pocket costs for training and microchip implantation; her wages lost while searching for Licorice after the dog escaped; Schuster's mental anguish, emotional distress and counseling costs; "'intrinsic value' loss of companionship"; exemplary damages; and attorneys fees. Petco now brings a restricted appeal challenging the award of several of these

---

[1] We are thus not addressing the damages recoverable for the loss of such animals as livestock, equines, or wild animals.

damage elements. Because we are bound to adhere to Texas's traditional restrictive view toward damages for the loss of a dog, we will affirm in part and reverse in part.

## BACKGROUND

On January 16, 2003, Schuster brought her fourteen-month-old miniature schnauzer, Licorice, to a Petco store in Austin to be groomed. As Schuster was returning to the store to pick up Licorice, she saw the dog running away from the store through the surrounding high-traffic area. Later, Schuster learned that Licorice had slipped her leash and run away from a Petco employee who had taken the dog outside for a bathroom break. Schuster and Petco employees searched for Licorice for four days until, tragically, the dog was found dead, having been run over by traffic.

Schuster sued Petco for breach of contract, gross negligence, and conversion. Petco did not answer, and Schuster took a default judgment and then offered evidence to support a range of unliquidated damages. Schuster testified that Licorice's replacement value was $500.00, that she had incurred $892.00 to send Licorice to training school and $52.40 for microchip implantation,[2] and that she had lost $857.68 in wages while missing work to search for Licorice.

Schuster also testified that she had experienced a total of $645,000 in mental anguish while searching for Licorice and after learning of the dog's death, as well as $160 in counseling costs. Schuster also asked the district court to award $280,000 in damages for "loss of companionship of Licorice." She additionally requested $1 million in exemplary damages, plus attorneys fees.

---

[2] Apparently implanted microchips are used as identifiers, essentially a high tech version of dog tags.

The district court awarded Schuster the following damages:

$500.00 as the replacement value of Licorice;

$892.00 as reimbursement costs of putting Licorice through training school;

$52.40 as reimbursement for microchip implantation;

$857.68 as lost wages for Schuster when she was searching for Licorice;

$160.00 as counseling costs;

$10,000 as compensation to Schuster for mental anguish and emotional distress;

$10,000 as compensation for "'intrinsic value'" loss of companionship";

$10,000 as exemplary damages; and

$ 6,750 as attorney's fees (with more allowed for any appeals taken).

The district court thus awarded Schuster the full amount of damages she had requested except reduced amounts for mental anguish, loss of companionship, and exemplary damages. The court expressed skepticism that any damages beyond replacement value for Licorice were properly recoverable. Nonetheless, it awarded $10,000 each for mental anguish, loss of companionship, and exemplary damages.[3]

The judgment was signed on April 29, 2003. Petco did not file a motion for new trial but filed a notice of appeal on June 11, 2003, over 40 days after the judgment was signed. Petco

---

[3] The court viewed these amounts as "more appropriate and more in line with anything that might hold up."

3

contends only that the damage award is not authorized by law or supported by the evidence. Specifically, Petco urges: (1) Texas law does not support any award for mental anguish and related counseling, loss of companionship, or lost wages for the loss of a dog; (2) there was no evidence of conduct by Petco to support imposition of exemplary damages; (3) the attorney's fee award, which was based upon forty-five hours of work by Schuster's attorney at $150 per hour, was excessive; and (4) the district court erroneously awarded both breach of contract and tort damages for the same injury, the loss of Licorice.

## DISCUSSION

### Standard and scope of review

Although Petco filed its notice of appeal after the ordinary 30-day deadline for perfecting appeal had expired, it acted within the six-month period for bringing a restricted appeal. Tex. Civ. Prac. & Rem. Code Ann. § 51.013 (West 1997); Tex. R. App. P. 26.1(c), 30. A direct attack on a judgment by restricted appeal must (1) be brought within six months after the trial court signs the judgment; and, additionally, (2) be brought by a party to the suit; (3) who did not participate in the hearing that resulted in the judgment complained of, timely file a postjudgment motion, request for findings of fact and conclusions of law, or a notice of appeal within the normal thirty-day period; and (4) the error complained of must be apparent from the face of the record. Tex. R. App. P. 30; *Norman Communications v. Texas Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997) (per curiam). Schuster does not dispute that Petco satisfied the first three conditions for bringing a restricted appeal. The fourth condition helps define our scope of review.

4

In a restricted appeal, we are limited to considering only the face of the record, but our scope of review is otherwise the same as that in an ordinary appeal; that is, we review the entire case. *Norman Communications*, 955 S.W.2d at 270; *L.P.D. v. R.C.*, 959 S.W.2d 728, 730 (Tex. App.—Austin 1998, pet. denied). The face of the record, for purposes of restricted appeal review, consists of all the papers on file in the appeal, including the reporter's record. *Norman Communications*, 955 S.W.2d at 270. Thus, "[i]t necessarily follows that review of the entire case includes review of legal and factual insufficiency claims." *Id.* We can thus consider Petco's challenges to the legal and factual sufficiency of the trial court's damage award in this proceeding. This includes not only the amount of damages awarded, but whether Schuster has established the required causal nexus between those damages and the event sued upon, the death of Licorice. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731-32 (Tex. 1984); *Transport Concepts v. Reeves*, 748 S.W.2d 302, 304 (Tex. App.—Dallas 1998, no pet.). We can also consider the related, purely legal issue of whether the various elements of the damage award are recoverable under Texas law. *See Fitz v. Toungate*, 419 S.W.2d 708 (Tex. Civ. App.—Austin 1967, writ ref'd n.r.e.); *cf. City of Tyler v. Likes*, 962 S.W.2d 489 (Tex. 1997) (affirming summary judgment and holding that Texas law does not permit recovery of mental anguish damages arising from loss of property). Because the judgment itemized the damage elements the district court awarded, we can consider each element separately. *See, e.g.*, *Dawson v. Briggs*, 107 S.W.3d 739, 749 (Tex. App.—Fort Worth 2003, no pet.).[4]

---

[4] Schuster urges that Petco has waived its appeal by failing to file a motion for new trial. She relies upon Texas Rule of Civil Procedure 324(b), which provides that "[a] point in a motion for new trial is a prerequisite to the following complaints on appeal . . . a complaint on which

In deciding a legal sufficiency challenge, "we must view the evidence in a light that tends to support the disputed finding and disregard evidence and inferences to the contrary." *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) (citing *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001)). A legal sufficiency or "no evidence" point will be sustained when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1996); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362-63 (1960). More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner,* 953 S.W.2d 706, 711 (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995); *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994)). If the evidence is so weak as to do no more than create a mere surmise or suspicion

---

evidence must be heard such as . . . failure to set aside a judgment by default." Tex. R. Civ. Proc. 324(b). But Petco does not attempt to set aside the default judgment or raise other grounds that would require evidence; instead, it challenges only the legal validity of the damages awarded and the sufficiency of the evidence supporting them. These matters, as explained above, can be determined from the face of the existing record. Moreover, if, as Schuster suggests, Rule 324(b) means that a motion for new trial is required as a prerequisite for all appeals from default judgments, it would preclude all restricted appeals. One of the requirements for bringing a restricted appeal is that the party has not filed a postjudgment motion in the trial court. Tex. R. App. P. 30. We reject such a broad reading of Rule 324(b).

6

of its existence, its legal effect is that it is no evidence. *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 182 (Tex. 1995).

When reviewing a jury verdict to determine the factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We will not substitute our judgment for that of the trier of fact merely because we reach a different conclusion. *Id.*

**Damages for loss of a dog**

Petco asserts that the district court could not, as a matter of law, award Schuster damages for mental anguish, counseling costs, "'intrinsic value' loss of companionship," and lost wages. We agree.

Analysis of damage issues recoverable for the loss of a dog in Texas begins with *Heiligmann v. Rose*, 16 S.W. 931 (Tex. 1891), a tort action arising from the poisoning deaths of several dogs. The jury, finding that the defendant poisoned the dogs intentionally and maliciously, awarded both actual and exemplary damages. *Id.* The defendant challenged the sufficiency of the evidence of damages. *Id.* In addressing this argument, the Texas Supreme Court articulated legal principles governing damages for the death of a dog:

> The authorities well settle that dogs are property, and that an owner has his action and remedy against a trespasser for the damages resulting from injuries inflicted upon them. Some authorit[i]es hold that dogs have no market value. This may be relatively true, but it is not a rule that will govern in all cases. It may be difficult, in the majority of cases, to ascertain the market value of a dog, but such a result may, in some cases, be accomplished. The special charge asked by appellant, and given by the court,

7

substantially presents the true rule in determining the value of dogs.[5]  It may be either a market value, if the dog has any, or some special or pecuniary value to the owner, that may be ascertained by reference to the usefulness and services of the dog.

*Id.* at 932.  Evaluating the evidence, the court noted that the dogs had been "of a fine breed, and well-trained," that the owners had taken "great pains" to raise them, and that one of the dogs had even been trained to identify, through distinguishing barks, whether persons who approached were men, women or children.  *Id.*  The court concluded that while "[t]here is no evidence in this case that the dogs had a market value . . . the evidence is ample showing the usefulness and services of the dogs, and that they were of special value to the owner."  *Id.*

Though decided a few years before the Texas courts of appeals were created, *Heiligmann* remains the law today, and it stands for several key principles that govern our resolution of the damage issues in this case.  First, it classifies dogs as personal *property* for damage purposes, not as persons, extensions of their owners, or any other legal entity whose loss would ordinarily give rise to personal injury damages.  Texas courts have continued to classify dogs as property for damage purposes.  *Zeid v. Pearce*, 953 S.W.2d 368 (Tex. App.—El Paso 1997, no writ); *Buekner v. Hamel*, 886 S.W.2d 368, 370 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *see also Arrington v.*

---

[5]  The special charge referenced by the supreme court provided, in relevant part:

> In order for the plaintiffs to recover, you must find from the testimony that the defendant poisoned the dogs, and that they were the property of plaintiffs; that the dogs were of some pecuniary value,—either that they had some market value at which they would sell, or that the services or use of the dogs were of some pecuniary value . . . .

*Heiligmann v. Rose*, 16 S.W. 931 (Tex. 1891).

8

*Arrington*, 613 S.W.2d 565, 569 (Tex. Civ. App.—Fort Worth 1981, no writ) (refusing to appoint managing conservator of pet dog in divorce case, observing that "[a] dog, for all its admirable and unique qualities, is not a human being and is not treated in the law as such. A dog is personal property, ownership of which is recognized under the law."). We do not understand Schuster to be challenging this traditional classification.[6]

Second, *Heiligmann* identifies only two elements that can be awarded under the "true rule" of damages for loss of a dog: (1) market value, if any, and (2) "some special or pecuniary value to the owner, that may be ascertained by reference to the usefulness and services of the dog." Third, *Heiligmann* makes clear that the "special or pecuniary value" of a dog to its owner refers solely to economic value derived from the dog's usefulness and services, not value attributed to companionship or other sentimental considerations.

With these key principles in mind, we turn to Petco's challenges to Schuster's mental anguish, counseling costs, "'intrinsic value' loss of companionship" and lost wages damages.

Mental anguish

Petco maintains that *Heiligmann* forecloses Schuster's recovery of mental anguish damages. Though *Heiligmann* did not squarely address whether mental anguish damages are available for the loss of a dog, our sister court in El Paso has held "this longstanding Texas rule"

---

[6] Nor does Amicus Curiae Animal Legal Defense Fund. While recognizing the status of animals as property, it urges that this classification should not preclude the award of intrinsic value damages reflecting the value of animals as companions. But another Amicus Curiae, Animal Legal Reports Services, urges this Court to classify companion animals as "sentient" property, a status that recognizes the animals' own feelings and emotions.

barred recovery of damages for mental anguish, as well as pain and suffering, for the loss of a dog in a veterinary negligence case. *Zeid*, 953 S.W.2d at 369.[7]

In response, Schuster points out that at least one Texas court awarded mental anguish damages in a case involving the fatal shooting of a dog. *City of Garland v. White*, 368 S.W.2d 12, 14-17 (Tex. Civ. App.—Eastland 1963, writ ref'd n.r.e). But the *White* court never mentions *Heiligmann* and it is unclear whether the defendants ever disputed whether mental anguish damages were properly recoverable for the death of a dog. Even if *White* might otherwise support Schuster, the case is easily distinguishable.

*White* involved the intentional, premeditated shooting of a dog. *Id.* at 14-15.[8] By contrast, Schuster asserts at most gross negligence. The Texas Supreme Court, addressing property damage cases generally, held that mental anguish damages are not recoverable for negligent property damage as a matter of law. *Likes*, 962 S.W.2d at 497. The supreme court explicitly reserved the question of whether mental anguish arising from property damage might be available where a degree of culpability higher than simple negligence is found. *Id.* But the only Texas court to have subsequently addressed the question concluded that grossly negligent property damage can support a claim for mental anguish only where there is evidence of some ill-will, animus, or desire to harm

---

[7] The *Zeid* court also observed that the Texas Supreme Court had refused to permit bystander recovery for mental anguish in medical malpractice cases involving humans. It rejected any thought of permitting recovery of mental anguish where medical malpractice harms a dog. *Zeid v. Pearce*, 953 S.W.2d 368, 370 (Tex. App.—El Paso 1997, no writ) (citing *Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 81 (Tex. 1997)).

[8] This Court once cited *Garland* for the proposition that "defendant who intentionally and wrongfully shot plaintiff's dog liable for unintended injuries to plaintiff in form of mental pain and suffering and physical damage to his house caused by the shotgun blast" *Bennight v. Western Auto Supply Co.*, 670 S.W.2d 373, 378 (Tex. App.—Austin 1984, writ ref'd n.r.e).

10

the plaintiff personally. *Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 753-57 (Tex. App.—Houston [14th Dist.] 1998, no pet.). There is no such evidence here.

The only proof that Schuster offered to establish her mental anguish damages was her testimony that she had been "terror ridden" as she searched for Licorice because the dog "had never been out, never been loose" and was likely scared; "it was cold, freezing weather" and the dog had just had a short haircut; and Schuster feared that Licorice would be killed on the busy roads. Schuster then quantified her anguish as ranging between $1,000 and $20,000 per day. Nowhere in her testimony, or even in her pleadings, did Schuster claim any ill-will, animus or desire by Petco to harm her personally.

Schuster also relies on a line of cases awarding mental anguish damages when arising from the breach of duties incident to certain "special relationships," including "a very limited number of contracts dealing with intensely emotional noncommercial subjects" such as preparing a corpse for burial or delivering news of a family emergency. *Likes*, 962 S.W.2d at 496 (citing *Pat H. Foley & Co. v. Wyatt,* 442 S.W.2d 904 (Tex. Civ. App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.), and *Stuart v. Western Union Tel. Co.*, 18 S.W. 351, 353 (Tex. 1885)). It is unclear whether Schuster views these cases as supporting mental anguish damages under her tort claims or breach of contract claim, or both. Regardless, Schuster does not attempt to explain how or why dog grooming falls within the narrow class of "intensely emotional noncommercial subjects" that could give rise to mental anguish damages. To the contrary, we believe Schuster's claim is governed by the general rule that mental anguish damages are not available for breach of a contract, *Stewart Title*

11

*Guar. Co. v. Aiello*, 941 S.W.2d 68, 72 (Tex. 1997), and by the traditional limitations of

*Heiligmann.*[9]

Because there is no support in Texas law for awarding mental anguish damages for

the loss of a dog, we reverse the trial court's award of mental anguish damages. *Heiligmann*, 16

S.W. at 932; *Zeid*, 953 S.W.2d at 369.

Counseling expenses

Because Schuster cannot recover for mental anguish or emotional harm arising from

Licorice's death, we also reverse her award of counseling expenses. Alternatively, we agree with

Petco that there is no evidence that those expenses were reasonable and necessary.

The sole evidence supporting the counseling expenses award was Schuster's own

testimony. Her attorney asked her: "[h]ave you been through counseling since the death of

Licorice?" She responded that she had and had spent $160 in copayments for the counseling

sessions. She provided no testimony regarding reasonableness or necessity; therefore, this testimony

is no evidence supporting Schuster's award for counseling costs. *See Jackson v. Gutierrez,* 77

S.W.3d 896, 902-03 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (in restricted appeal, holding

---

[9] In addition, with regard to Schuster's conversion claim, we note that Texas courts have refused to award mental anguish damages for conversion. *Winkle Chevy-Olds-Pontiac v. Condon*, 830 S.W.2d 740, 746 (Tex. App.—Corpus Christi 1992, writ dism'd) (mental anguish not recoverable for conversion but may be considered in awarding exemplary damages); *First Nat'l Bank of Missouri City v. Gittleman*, 788 S.W.2d 165, 169 (Tex. App.—Houston [14th Dist.] 1990, writ denied) (same); *but see City of Tyler v. Likes*, 962 S.W.2d 489, 498 (Tex. 1997) (citing *Gittleman* for the proposition that mental anguish is not a compensable result of injuries to property interests, but characterizing it as involving "conversion without malice").

12

that failure of default judgment plaintiff to present evidence of reasonableness and necessity of medical expenses required reversal of medical expenses award).

<u>"'Intrinsic value' loss of companionship"</u>

The trial court also awarded an element of damages it termed "'intrinsic value' loss of companionship." The sole proof Schuster offered in support of these damages related to her subjective feelings for Licorice. At the default judgment hearing, Schuster testified that she had purchased Licorice "as a friend and companion" after most of her children had left home. Licorice, Schuster recounted,

> was with me all the time that I was home. We always joked that her name should have been Velcro instead of Licorice because she was right by my leg all the time. We went places together. If I went somewhere where she could go, she went with me . . . . She was a companion to me and I miss her.

Schuster calculated $280,000 in "loss of companionship" damages based on what she asserted was the average life expectancy of a miniature schnauzer, 14 years, times the amount of annual salary increase, $20,000, she claimed would be required to induce her to accept a job requiring her to part with Licorice.

Although it perhaps resembles her claimed mental anguish or even the "loss of companionship" that is a component of lost human consortium, Schuster conceives her "loss of companionship" damages to be a form of "intrinsic value" property damages. "Intrinsic value" damages are conceptually distinct from personal injury damages. *See Zeid*, 953 S.W.2d at 369-70 (distinguishing Zeid's mental anguish and pain and suffering claim from special or intrinsic value

13

damages claim in *Bueckner*).  Texas law permits the recovery of "intrinsic value" as the measure of property damages in certain instances.  *Porras v. Craig*, 675 S.W.2d 503, 506 (Tex. 1984) (intrinsic value of felled trees might be recoverable); *see also Ives v. Webb*, 543 S.W.2d 907, 910 (Tex. Civ. App.—Corpus Christi 1976, no writ) (permitting award of intrinsic value damages in pure breach of contract suit).

Broadly speaking, intrinsic value is an inherent value not established by market forces; it is a personal or sentimental value.  *Star Houston, Inc. v. Kundak*, 843 S.W.2d 294, 298 (Tex. App.—Houston [14th Dist.] 1992, no writ).  For example, the intrinsic value of trees is said to be comprised of both an ornamental (aesthetic) value and a utility (shade) value.  *Cummer-Gramm Co. v. Maddox*, 285 S.W.2d 932, 936 (Tex. 1956).

Schuster relies on *Porras v. Craig* for the proposition that she can recover the "intrinsic value" of Licorice as a beloved companion.  But, again, *Heiligmann* and its progeny preclude such a recovery.  *Heiligmann*'s "true rule" permitted recovery of a dog's "special or pecuniary value" ascertained solely "*by reference to the usefulness and services of the dog.*"  *Heiligmann*, 16 S.W. at 932 (emphasis added).  Subsequently, in *Young's Bus Lines v. Redmon*, which involved the death of a seeing eye dog, the court distinguished between what it termed a dog's "intrinsic or actual value" (*i.e.*, pecuniary value) which might be recoverable, and the mere "peculiar or sentimental value placed upon the dog by [the owner], or what he considered the dog worth to him," which the court deemed irrelevant and inadmissible.  43 S.W.2d 266, 267-68 (Tex. Civ. App.—Beaumont 1931, no writ).  *See also Zeid*, 953 S.W.2d at 369 (citing *Heiligmann* for proposition that recovery for death of a dog "is the dog's market value, if any, or some special or

14

pecuniary value to the owner that may be ascertained by reference to the dog's usefulness or services."). *Heiligmann* precludes the award of intrinsic value damages to Schuster, as she relies solely on sentimental considerations.

The Animal Legal Defense Fund presents an amicus brief supporting Schuster by urging that such a limited concept of the intrinsic value of dogs is archaic and fails to take account of the modern view of dogs as beloved friends and companions, a view reflected in Justice Eric Andell's concurrence in *Bueckner*,886 S.W.2d at 373 (Andell, J., concurring). One commentator cited in the brief went as far as to suggest Americans today view their pets as more akin to family members than mere property:

> In the United States, there is nearly one pet for every two Americans. Further, approximately 124 million dogs and cats live in American households. In one study, forty-five percent of dog owners reported that they take their pets on vacation. Another recent survey revealed that more than half of companion animal owners would prefer a dog or cat to a human if stranded on a desert island. Another poll revealed that fifty percent of pet owners would be 'very likely' to risk their lives to save their pets, and another thirty-three percent indicated they would be 'somewhat likely' to put their own lives in danger. These statistics indicate that companion animal owners view their pets as family members, rather than personal property.

William C. Root, *Man's Best Friend: Property or Family Member? An Examination of the Legal Classification of Companion Animals and its Impact on Damages Recoverable for their Wrongful Death or Injury*, 47 Vil. L. Rev. 423, 423 (2002) (footnotes omitted). Indeed, within our jurisdiction, there are myriad examples that Texans today view dogs more as companions, friends, or even something akin to family than as an economic tool or benefit. There are at least thirty dog rescue

organizations in the Austin area,[10] Austin's "Mighty Texas Dog Walk" annually draws thousands of participants,[11] and even Petco's counsel have publicly acknowledged "the special bond between a pet and its owner" and suggested that "it is the rare person who does not get a little teary-eyed when Old Yeller dies."[12]

As an intermediate appellate court, we are not free to mold Texas law as we see fit but must instead follow the precedents of the Texas Supreme Court unless and until the high court overrules them or the Texas Legislature supersedes them by statute.[13] Thus, we follow *Heiligmann* and reject Schuster's attempt to expand "intrinsic value" damages to embrace the subjective value that a dog's owner places on its companionship.

Additionally, even if *Porras* or other more recent supreme court decisions could be construed as broadening the availability of intrinsic value damages in animal cases, Schuster did not meet the conditions for recovering those damages here. Intrinsic value damages are recoverable only where the property is shown to have neither market value nor replacement value. *International Great Northern R. Co. v. Casey*, 46 S.W.2d 669, 670 (Tex. Comm. App. 1932, holding approved); *see also Porras,* 675 S.W.2d at 506 (intrinsic value damages unavailable unless loss of trees were shown *not* to have reduced market value of land); *City of Austin v. Cannizo*, 267 S.W.2d 808, 812-13

---

[10] See *www.austinrescue.com/index.html* (last visited Apr. 8, 2004).

[11] See *www.servicedogs.org/news/dogwalk2004.htm* (last visited Apr. 8, 2004).

[12] William W. Krueger & Christian Von Wupperfield, *The Truth About Cats and Dogs*, Texas Lawyer (Feb. 23, 2003), at 27.

[13] We note that the legislature has previously enacted statutes prescribing criminal penalties for cruelty to animals. Tex. Penal Code Ann. § 42.09 (West 2003).

(Tex. 1954) (in condemnation case, landowner could not recover intrinsic value absent finding that property had no market value).[14] Schuster did not satisfy that condition. She offered no proof at all regarding Licorice's market value, or whether Licorice had any such value, and she testified that the dog's replacement value was $500.[15]

Accordingly, we reverse the trial court's damage award for "'intrinsic value' loss of companionship."

Lost wages

*Heiligmann* would also appear to preclude Schuster's lost wages recovery. Moreover, Schuster cites no authority allowing her to recover lost wages for property damage unrelated to her job. *Likes* informs us that "[w]hile few persons suffering serious bodily injury would feel made whole by the mere recovery of medical expenses and lost wages, many whose *property* has been damaged or destroyed will be *entirely satisfied by recovery of its value*." 962 S.W.2d at 496-97 (emphasis added). We conclude that "lost wages" are not properly recoverable under Schuster's tort theories. *See Heiligmann*, 16 S.W. at 932; *Zeid*, 953 S.W.2d 368; *Buekner*, 886 S.W.2d 368.

---

[14] *Redmon* also held that the plaintiff could not recover intrinsic value damages unless he first showed the dog had no market value. *Redmon*, 43 S.W.2d at 267-68.

[15] In *Williams v. Dodson,* 976 S.W.2d 861, 865 (Tex. App.—Austin 1998, no pet.), this Court permitted the recovery of what it termed "intrinsic value" damages for the conversion of a bracelet without first requiring proof regarding market value or replacement value. The Court was applying a measure of damages applicable to marketable chattels held for the use and comfort of their owner. *Id.* In this context, "intrinsic value" damages refer to the loss of use of the chattel to the owner, excluding fanciful or sentimental considerations. *Id.* at 864; *Crisp v. Security Nat'l Ins. Co.*, 369 S.W.2d 326, 328-29 (Tex. 1963) ("The measure of damages that should be applied . . . is the actual worth or values of the articles to the owner for use in the condition they were in at the time of the fire excluding any fanciful or sentimental considerations."). Schuster does not suggest that she could recover her broader notion of "intrinsic value" damages under this theory.

17

Lost wages in this case also have too attenuated a connection to Petco's conduct to be recoverable under her breach of contract theory. The supreme court has recently discussed consequential damages in a breach of contract context:

> Consequential damages are those damages that 'result naturally, but not necessarily, from the defendant's wrongful acts.' They are not recoverable unless the parties contemplated at the time they made the contract that such damages would be a probable result of the breach. Thus, to be recoverable, consequential damages must be foreseeable and directly traceable to the wrongful act and result from it.

*Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex. 1998) (internal citations omitted). We find Schuster's lost wages damages too remote to be fairly compensable. We reverse Schuster's award for lost wages.

**Exemplary damages**

Petco asserts in its third issue that the district court improperly awarded Schuster exemplary damages. As to her tort claim, Petco urges there is no evidence by which any grossly negligent conduct by individual employees can be attributed to Petco. As to Schuster's breach of contract claim, Petco argues that exemplary damages are not recoverable for a breach of contract. We agree. Again, we apply a legal sufficiency standard to the record to determine whether exemplary damages were proper. *See Wal-Mart Stores, Inc.*, 121 S.W.3d at 739.

In order for exemplary damages to have been proper in this case, Schuster would have had to have shown by clear and convincing evidence that the harm that she suffered was caused by fraud or malice on the part of Petco. Tex. Civ. Prac. & Rem. Code Ann. § 41.003 (West 1997). Further, punitive or exemplary damages may be recovered against a corporation only if the grossly

18

negligent act is the very act of the corporation itself. *See Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997). If the act is that of a mere servant or employee, then it must have been previously authorized or subsequently must be approved by the corporation. *See id.*; *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998) (citing *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex.1994)) ("A corporation is liable for exemplary damages if it authorizes or ratifies an agent's gross negligence or if it is grossly negligent in hiring any unfit agent.").[16]

Schuster asserts that Petco approved the action of the negligent employee when it had its employees search for Schuster's pet. We cannot agree that Petco's attempt to ameliorate the consequences of its employee's negligence is an act approving or ratifying the negligent act itself. The mere fact that Petco employees searched for Schuster's dog does not suggest that Petco vouched for the employee's act of losing the dog in the first place. Further, there is no evidence in the record that the employees were searching for Schuster's dog under the direction of Petco; the employees may have been searching for Licorice on their own accord.

---

[16] Corporations may also be liable for exemplary damages when a "vice principal" of the corporation commits a grossly negligent act. The supreme court uses the term "vice principal" to describe the kind of employee that may "act for the corporation itself":

> . . . the term 'vice principal' embrac[es] [] four classes of corporate agents . . . : (a) Corporate officers; (b) those who have authority to employ, direct, and discharge servants of the master; (c) those engaged in the performance of nondelegable or absolute duties of the master; and (d) those to whom a master has confided the management of the whole or a department or division of his business. . . .

*Fort Worth Elevators Co. v. Russell*, 70 S.W.2d 397, 406 (Tex. 1934), *overruled on other grounds by Wright v. Gifford-Hill & Co.*, 725 S.W.2d 712, 714 (Tex. 1987). Schuster does not argue that the Petco employees who lost or searched for her dog were its vice principals.

Schuster also offered internet printouts from various organizations accusing Petco of generally treating the animals it sells inhumanely and that its employees are poorly trained in animal maintenance. This evidence is legally insufficient to show, however, that the Petco employees involved in this case were inadequately trained or that any such deficiency caused Licorice's escape.

As to the breach of contract claim, exemplary damages are not recoverable for a breach of contract, even one breached maliciously, as a matter of law. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). We reverse Schuster's award of exemplary damages.

**Attorney's fees**

Petco asserts in its fourth issues that the evidence does not support the district court's award of attorney's fees for forty-five hours of legal work prior to taking the default judgment in this case. Schuster could recover attorney's fees pursuant to her breach of contract claim. *See* Tex. Civ. Prac. & Rem. Code Ann § 38.001 (West 1997). However, the reasonableness of the attorney's fees awarded is a question of fact and must be supported by the evidence. *See Grace v. Duke*, 54 S.W.3d 338, 344 (Tex. App.—Austin 2001, no pet.). Clear, direct, and uncontroverted evidence of attorney's fees is taken as true as a matter of law. *See id.* The supreme court has stated eight factors that a fact finder should consider when determining the reasonableness of a fee:

    (1)  the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

    (2)  the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

    (3)  the fee customarily charged in the locality for similar legal services;

20

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex 1997). Not all of the factors must be considered in every case. These are general guidelines that the supreme court has stated should be taken into account when determining the reasonableness of attorney's fees.

The record in the present case shows that Schuster's attorney charged $150 per hour for his legal work and that he worked for 45 legal hours on Schuster's case. Petco asserts that forty-five hours is unreasonable for work prior to a default judgment in a case concerning the death of a dog. We disagree that the fees were unreasonable in this case. The record shows that Schuster's attorney drafted pleadings, prepared motions, spoke with Petco representatives and his client on several occasions, prepared for the default judgment hearing, and performed research regarding the availability of damages for the death of a dog. Although we view Texas law as fairly straightforward on this issue, we note that this subject has been the focus of scholarly analysis and case law development in other jurisdictions and that the Texas Supreme Court has recognized the complexity of Texas law regarding mental anguish damages for the loss of property. *See Likes*, 962 S.W.2d 489. We overrule Petco's fourth issue.

21

**Double recovery**

Petco asserts that the district court erred by allowing Schuster to recover damages on both her breach of contract and tort claims. Our disposition of the preceding issues obviates this point. Under her breach of contract theory, Schuster may recover each of the elements of damages that remain available: replacement value, reimbursement of expenses for training and microchip implantation, attorney's fees, and court costs.[17] *See Tarleton State University v. K.A. Sparks Contractor, Inc.*, 695 S.W.2d 362 (Tex. App.—Waco 1985, writ ref'd n.r.e.); Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

## CONCLUSION

We reverse the district court's award for mental anguish damages, counseling costs, "'intrinsic value' loss of companionship," lost wages and exemplary damages. We otherwise affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Justices Kidd, Puryear and Pemberton

Affirmed in Part; Reversed and Rendered in Part

Filed: April 29, 2004

_____

[17] Petco did not appeal Schuster's award for replacement value or reimbursement for training and microchip implantation.

22