# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00246-CV

**Scarlett Rebecca Kogel, Appellant**

**v.**

**Thomas Wyatt Robertson, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
## NO. 99-11464, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal arises from a suit to modify a custody order and a child support enforcement action. During the original suit affecting the parent-child relationship, the district court appointed appellee, Robertson, the child's father, as sole managing conservator and appellant, Kogel, the child's mother, as the possessory conservator. Kogel brought suit to modify the custody order. Robertson counter-petitioned for his own desired modifications and sued to enforce Kogel's child support obligations. The district court ruled against Kogel on the modification and child support enforcement issues, and held Kogel in contempt for failing to obey an earlier court order. This appeal followed. For the reasons discussed below, we modify the child support enforcement order and, as modified, affirm the district court's orders.

## BACKGROUND

In late 1999, Robertson filed for divorce from his wife, Kogel. At the time, their daughter, C. R., a U.S. citizen, was one year old. During the custody dispute, Kogel accused Robertson of sexually abusing C. R.. The district court appointed experts to investigate the allegation, and ordered Kogel to bring the child to court by November 30, 2001 and to cooperate with the experts assigned to the case. In November 2001, Kogel disobeyed the court order and fled with C. R. to Belgium before the court date.

The original suit affecting the parent-child relationship ("SAPCR") was heard in a bench trial in early February 2002. The district court found that the charges of sexual abuse were false and lacked a factual basis; that Kogel failed to deliver C. R. as ordered by the court; and that Kogel retained C. R. outside of the United States with the intent to obstruct the exercise of Robertson's parental rights, which constituted unlawful interference with a custody order. The court further found that C. R. had been present in Austin, Texas, for an amount of time sufficient for acclimatization; that C. R.'s retention outside of the United States put the child at great risk of psychological harm and placed the child in an "intolerable" situation; and that if the child were returned to Robertson, these harms would be alleviated.

On February 6, 2002, the court ordered Kogel to bring C. R. back to Robertson in Texas, and appointed Robertson as the sole managing conservator and Kogel as possessory conservator of C. R.. The order also required C. R. and Kogel to seek psychological and psychiatric treatment. The treatment costs were taxed to Kogel. The court found that the standard possessory order was not in the best interest of the child and permitted Kogel to see C. R. at least twice a month,

2

but only under supervised and secure conditions. Kogel was ordered to post a $10,000 bond, payable to Robertson, as a security measure for Kogel's visitations.

The court ordered Kogel to pay Robertson $156 per month in child support and permanently enjoined Kogel from interfering with Robertson's parental rights. Kogel was also assessed a statutory $500 penalty for filing a false child abuse report. The order awarded Robertson approximately $52,000 in attorney's fees and taxed the court costs as well as the ad litem attorney's fees to Kogel. Kogel's motion for a new trial was overruled. The judgment became final and was not appealed.

A Belgian trial court began proceedings to enforce the Texas judgment on August 23, 2002. The Belgian court found the custody aspects of the order enforceable, but declined to enforce its monetary provisions. An appeal was taken to the Belgian Court of Appeals, which found in favor of Robertson on May 13, 2003, and ordered C. R. returned to the United States under the Hague Convention.[1]

On August 8, 2003, Kogel filed a petition to modify the February 6, 2002 order in Travis County on the grounds that circumstances had materially and substantially changed since the date the order was entered. Robertson filed his own counter-petition to modify the custody order and filed a motion to enforce the child support provisions. In November 2003, the district court, in a bench trial, heard the custody modification and child support enforcement actions. Some of the inquiry focused on the intent behind Kogel's decision to leave the country with C. R. in defiance of

---

[1] Hague Convention of 25 October 1980 on Civil Aspects of International Child Abduction (multilaterial international treaty of which both Belgium and the United States are signatories, implemented by Congress in the International Child Abduction Remedies Act, and codified at 42 U.S.C. §§ 11601-11610 (1988)).

the court's SAPCR orders; the court expressed concerns for Kogel's ability to follow future court orders. The district court directly questioned Kogel as a witness on several occasions, including soliciting Kogel's opinion about what circumstances have changed to warrant modifying the custody and child support orders.

The district court issued its modification and child support enforcement orders on August 25, 2003. Pursuant to the section of the family code that incorporates the provisions of the Hague Convention, the court found evidence of a grave risk of international child abduction based on Kogel's previous flight and adopted appropriate safeguards to protect the child from a future international abduction. *See* Tex. Fam. Code Ann. §§ 153.501-.03 (West Supp. 2004-05). The district court modified the February 6, 2002 custody order: it found that changing the conservatorship arrangement was unwarranted but permitted Kogel increased access to C. R.; it ordered each parent to pay half of the visitation security and psychiatrist fees; and it ordered Kogel to post a $100,000 bond payable to Robertson to pay for C. R.'s recovery if Kogel abducts her again. *See id.* § 153.503(6). The modified order cancelled Kogel's and C. R.'s required psychological treatments under the February 6, 2002 order but ordered Kogel to reimburse Robertson for unpaid security costs.

In its child support enforcement order, the court held Kogel in contempt of the original order for failing to surrender C. R. at the appointed date and time and sentenced Kogel to 180 days in jail. The court suspended the sentence on the condition that Kogel comply with all of the terms of the child support enforcement order for two years. Kogel was ordered to pay $3,327 in back child support, execute the $100,000 bond, refrain from interfering with the exercise of

Robertson's parental rights, and jointly with Robertson, pay the ad litem's fees. The enforcement order also required Kogel to pay Robertson's attorney's fees incurred for the custody and child support enforcement actions; the order characterized the entire attorney's fees award as "in the nature of child support," the nonpayment of which would result in contempt of court and be punishable by confinement or fine. This appeal followed.

## DISCUSSION

Kogel appeals the district court's final order in five issues: (1) whether Kogel is entitled to a new trial because she was denied a fair and impartial trial; (2) whether there is sufficient evidence to establish that circumstances have materially and substantially changed and warrant a modification in the custody order; (3) whether the evidence was legally and factually insufficient to support the award of attorney's fees; (4) whether the district court erred in characterizing the award of attorney's fees as child support; and (5) whether the district court erred in conditioning the suspension of Kogel's contempt sentence on Kogel's compliance with the terms of the order.

### Fair and Impartial Trial

Kogel complains that she did not receive a "fair and impartial trial" because the district court judge improperly questioned her from the bench, impermissibly made himself a witness in violation of the Texas Rules of Evidence, and was not a fair and impartial magistrate. Kogel asserts that these errors reflect judicial impropriety, probable prejudice, and amount to the court unlawfully "punishing" Kogel for disobeying the Texas courts.

5

Our review of the record indicates that Kogel did not timely object to the judge's direct questioning and thus failed to preserve this issue for review. *See* Tex. R. App. P. 33.1 (objections must be timely made); Tex. R. Evid. 103 (evidentiary objections must be timely made). Kogel cannot resurrect the unpreserved error by raising this complaint in her motion for new trial. *See G.T.E. Mobilnet of S. Tex. P'ship v. Pascouet*, 61 S.W.3d 599, 613 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).[2]

Kogel next asserts that the judge improperly testified as a witness at the trial, violating rule of evidence 605, which provides, "The judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point." Tex. R. Evid. 605. The purpose of rule 605 is to preserve the judge's impartiality. *In re O'Quinn*, 77 S.W.3d 438, 448 (Tex. App.—Corpus Christi 2002, no pet.). Thus, the judge may not "step down from the bench and become a witness in the very same proceeding over which he is currently presiding." *Hensarling v. State*, 829 S.W.2d 168, 171 (Tex. Crim. App. 1992).

During the November 2003 modification trial, Kogel testified that her niece maintained a website that described in detail Kogel's version of the events and circumstances

---

[2] We note that even if Kogel had properly preserved this point of error for our review, she would not prevail. At least in the bench trial below, the district court judge acted appropriately when he questioned Kogel as a witness. *See Cason v. Taylor*, 51 S.W.3d 397, 413 (Tex. App.—Waco 2001, no pet.) (it is ordinarily proper for judge to ask witness competent and material questions to elicit evidence not otherwise presented or to clarify testimony); *Hudson v. Hudson*, 308 S.W.2d 140, 142 (Tex. Civ. App.—Austin 1957, no writ) (trial judge's lengthy and vigorous examination of witness was proper; judge's active role is more appropriate in bench trial than a jury trial); *Conley v. St. Jacques*, 110 S.W.2d 1238, 1241 (Tex. Civ. App.—Amarillo 1937, writ dism'd) (family code and Texas jurisprudence impose upon trial judge duty to inquire into all matters that would throw light upon fitness of person who seeks custody and environment into which child would be relegated by court's order).

surrounding the custody dispute, including Kogel's account of Robertson's alleged sexual abuse of C. R. and her views of the Texas justice system. Although the attorney ad litem offered to admit the documents herself, the district judge authenticated and admitted his printouts of the relevant website content as exhibits. Kogel did not object at trial to the authentication or admission of the exhibits. Kogel argues that the judge effectively became a trial witness when he authenticated and admitted his own exhibits, violating rule 605.

We hold that the district court did not violate rule 605 because the judge did not testify as a witness at the trial. We further note that the improper admission of or comment on evidence constitutes an ordinary trial error that must be preserved to be reviewed on appeal. *See In re M.S.*, 73 S.W.3d 537, 539-40 (Tex. App.—Beaumont 2002), *aff'd in relevant part*, 115 S.W.3d 534 (Tex. 2003). Kogel made no such objection at trial.

Last, Kogel asserts that she is entitled to a new trial because the judge was not a "neutral and detached magistrate," and thus Kogel was denied a fair and impartial trial. Kogel characterizes the questions that the district court asked her as "aggressive"and "intense," and cites this as evidence of the judge's partiality. Kogel also alleges that the prominence in the local legal community of Robertson, a local lawyer, and his father, a law professor of some note at the University of Texas, improperly influenced the judge's decision.

Parties have a right to a fair trial under the United States and Texas constitutions. *Metzger v. Sebek*, 892 S.W.2d 20, 37 (Tex. App.—Houston [1st Dist.] 1994, writ denied). One of the most fundamental components of a fair trial is "a neutral and detached judge." *Id.* We review the entire record for evidence of improper conduct. *Id.* at 39. To reverse a judgment on the ground

of improper conduct of or comments by the judge, we must find (1) judicial impropriety in fact occurred and (2) the complaining party suffered probable prejudice. *Id*.

We have reviewed the record in its entirety for evidence of the judge's partiality or other improper conduct, paying close attention to the excerpt Kogel emphasizes in her brief. The excerpt recites testimony Kogel gave in response to questions asked by the judge about Kogel's motivations to flee the country with C. R. in defiance of the court order, and about Kogel's niece's website content. We find no evidence in the record that the judge exhibited partiality or bias against Kogel; the judge did not improperly become an advocate during his direct questioning nor do we find evidence in the record that suggests that the Robertsons' involvement in the legal community influenced the judge's conduct at trial. *See id*. Asking witnesses questions directly from the bench is appropriate, especially in family law cases and bench trials. *Cason v. Taylor*, 51 S.W.3d 397, 413 (Tex. App.—Waco 2001, no pet.); *Hudson v. Hudson*, 308 S.W.2d 140, 142 (Tex. Civ. App.—Austin 1957, no writ); *see also Conley v. St. Jacques*, 110 S.W.2d 1238, 1241 (Tex. Civ. App.—Amarillo 1937, writ dism'd). We overrule Kogel's first issue.

**Modification of Parent-Child Relationship**

In her second issue, Kogel asserts that the district court erred when it modified the custody order denying the relief requested by Kogel and granting the modifications sought by Robertson. Kogel argues that the circumstances surrounding the parties have materially and substantially changed since the original February 6, 2002 order issued. Kogel also challenges the modified order as an abuse of discretion and argues that the evidence supporting the modification is legally and factually insufficient.

8

Kogel asked the district court to modify the original custody order by: appointing Kogel as joint managing conservator with the primary right to choose residence of the child; awarding her an equitable portion of the costs of changing C. R.'s residence; retroactively decreasing her child support obligation; and awarding her attorney's fees. The district court modified the custody order to permit Kogel increased access to C. R. and to cancel Kogel's required psychological treatments. The court further ordered each parent to pay half of the visitation security and psychiatrist fees, and ordered Kogel to post a $100,000 bond to cover the costs of recovering C. R. if she abducts C. R. again.

We turn first to Kogel's assertion that the district court erred when it failed to adopt her proposed modifications because circumstances had "materially and substantially changed" since the order was entered and that Kogel's proposed modification is in C. R.'s best interest. The family code provides that the court may modify the order: (1) if doing so would be in the child's best interest and (2) if the child's or parties' circumstances have "materially and substantially changed" since the order was entered. Tex. Fam. Code Ann. § 156.101(1) (West Supp. 2004-05). There is no bright-line rule to determine what is in the best interest of the child; each case must be determined on its unique set of facts. *See Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002). The district court has wide latitude in determining the best interests of a child and will be reversed only for abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). A court abuses its discretion only when it has acted in an unreasonable or arbitrary manner, or when it acts without reference to any guiding principle. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Under an abuse of discretion standard, legal and factual insufficiency are not independent

9

grounds of error, but only factors used to assess whether the court abused its discretion. *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.—Austin 1997, no pet.).

Evidence is legally insufficient to support a finding if the evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 519 (Tex. 2002). We consider all of the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Id*. A district court's findings of fact are reviewed for factual sufficiency of the evidence under the same legal standards as applied to review jury verdicts for factual sufficiency of the evidence. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). In reviewing factual sufficiency, we must weigh all of the evidence in the record. *Id.* Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* Inferences may support a judgment so long as they are reasonable in light of all of the evidence. *Id.*

The court found that the conservatorship assignments should not be changed; however, it did modify some child access provisions. The court found that granting Kogel's proposed modifications would not be in C. R.'s best interest, but that adopting some of the court's and Robertson's modifications would be in C. R.'s best interest.

We agree with Kogel that circumstances have materially and substantially changed since the February 6, 2002 order was rendered; the modifications the district court made to the order acknowledge this, because the district court could not have modified the order absent an implicit finding of changed circumstances. *See* Tex. Fam. Code Ann. § 156.101 (West Supp. 2004-05). However, even if circumstances have materially and substantially changed, this fact did not obligate

10

the district court to adopt the modifications urged by Kogel. The family code provides that the court *may* modify the order if (1) doing so would be in the child's best interest and (2) if the child's or conservator's circumstances have "materially and substantially changed" since the order was entered. *Id*. The issue of what is in the child's best interest is a separate and independent inquiry from the issue of whether the circumstances have materially and substantially changed. *See id*. Because we afford the district court wide latitude in determining the best interests of the child, we uphold the district court's determination that the adopted modifications were in C. R.'s best interests. *See Gillespie* 644 S.W.2d at 451.

There is ample statutory guidance and evidence in the record to support the district court's decision to modify the order in Robertson's favor. Section 153.501 of the family code authorizes a district court to take the measures outlined in section 153.503 if credible evidence is presented to indicate there is a potential risk of the international abduction of a child by a parent of the child. Tex. Fam. Code Ann. § 153.501. The abduction risk factors include evidence that a parent has taken or concealed a child, lacks a financial reason to stay in the U.S., or has a history of violating court orders. *Id*. § 153.502. If the district court finds that it is necessary to protect the child from international abduction, it may take the following measures including: appointing another person, such as the other parent, as sole managing conservator; requiring supervised visitation; prohibiting the parent from removing the child from the U.S.; and ordering the parent to execute a bond in an amount sufficient to offset the cost of recovering the child if the child is abducted. *Id*. § 153.503.

11

Kogel took C. R. to Belgium in direct violation of a court order and refused to return her. Kogel acknowledges that she does not have any ties to the United States and lacks financial reasons to stay in the United States. Thus, Kogel's situation and previous actions implicate many of the enumerated statutory risk factors. *See id.* § 153.502. The district court found that due to the grave risk of international child abduction posed by Kogel, it would be in C. R.'s best interest to effect measures calculated to prevent another abduction. The district court modified the order to provide more security for Kogel's visits with C. R. to prevent another abduction, as authorized under the family code. *See id.* §§ 153.501-.03.

Robertson claims to have spent hundreds of thousands of dollars in attorney's fees to recover C. R. from Belgium, which is significantly more than the value of the bond demanded of Kogel. Thus, the bond's increase from $10,000 in the original order to $100,000 in the modified order is justified by the resources Robertson spent to recover C. R. after her abduction and by Kogel's admitted access to resources. *See id.* § 153.503.

Considering the evidence in the light most favorable to Robertson, we hold that the evidence supporting the district court's modifications is legally sufficient. *See St. Joseph Hosp.*, 94 S.W.3d at 519. The findings of fact are not against the great weight and preponderance of the evidence and thus are factually sufficient. The findings of fact and the modification based thereon should not be overturned. *See Ortiz*, 917 S.W.2d at 772.

Kogel has not shown that the district court acted in an unreasonable and arbitrary manner or without reference to guiding principles when it found that it was in C. R.'s best interest for Robertson to remain sole managing conservator and that the other modifications were warranted.

12

Furthermore, because Kogel failed to establish that the evidence was legally and factually insufficient, these factors do not weigh in her favor under an abuse of discretion standard. *See Doyle*, 955 S.W.2d at 479. We hold that the district court did not abuse its discretion in denying Kogel's requested modifications and granting Robertson's and the court's modifications. We overrule Kogel's second issue.

**Attorney's Fees**

In her third issue, Kogel challenges the award of attorney's fees as an abuse of discretion and asserts that the award is not supported by legally and factually sufficient evidence.

The court may render judgment for reasonable attorney's fees and expenses and order the judgment and postjudgment interest to be paid directly to an attorney. Tex. Fam. Code Ann. § 106.002 (West Supp. 2004-05). The judgment may be enforced in the attorney's name by any means available for the enforcement of a judgment for debt. *Id.* An award of attorney's fees in a suit affecting the parent-child relationship is within the discretion of the district court. *See id.* § 106.001 (West 2002); *Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996). Under an abuse of discretion standard, legal and factual insufficiency are not independent grounds of error, but only factors used to assess whether the court abused its discretion. *Doyle*, 955 S.W.2d at 479.

The reasonableness of the attorney's fees awarded is a question of fact and must be supported by the evidence. *Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 567 (Tex. App.—Austin 2004, no pet.). In *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997), the supreme court laid out factors a district court should consider when determining the reasonableness of attorney's fees. *See also Petco Animal Supplies, Inc.*, 144 S.W.3d at 567. The

factors include: the time, labor and skill required to properly perform the legal service; the novelty and difficulty of the questions involved; the customary fees charged in the local legal community for similar legal services; the amount involved and the results obtained; the nature and length of the professional relationship with the client; and the experience, reputation and ability of the lawyer performing the services. *Arthur Andersen & Co.*, 945 S.W.2d at 818; *Petco Animal Supplies, Inc.*, 144 S.W.3d at 567. Not all of the factors must be considered in every case; rather these factors are general guidelines that should be taken into account when determining the reasonableness of attorney's fees. *Petco Animal Supplies, Inc.*, 144 S.W.3d at 567.

Clear, direct, and uncontroverted evidence of attorney's fees is taken as true as a matter of law. *Id.* In the absence of controverting evidence, an affidavit of counsel regarding the *Andersen* factors will support a district court's award of attorney's fees. *Moody Nat'l. Bank v. Riebschlager*, 946 S.W.2d 521, 525 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). The affidavit of an attorney representing a claimant constitutes expert testimony that will support an award of attorney's fees. *See Knighton v. International Bus. Machs. Corp.*, 856 S.W.2d 206, 210 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *Owen Elec. Supply, Inc. v. Brite Day Constr. Inc.*, 821 S.W.2d 283, 288 (Tex. App.—Houston [1st Dist.] 1992, writ denied). Evidence supporting an award of attorney's fees should include hourly rate and hours expended. *Central Tex. Micrographics v. Leal*, 908 S.W.2d 292, 299 (Tex. App.—San Antonio 1995, no writ).

Mr. Barrett, one of Robertson's attorneys, averred in his fees affidavit that he has been licensed to practice law since 1974 and has been board certified in family law since 1986. Barrett, who charges $350 per hour for his services, stated his familiarity with the billing rates for attorneys

14

and paralegals in the area of family law in Travis County and that the fees he charged were "reasonable and necessary" compared to other similarly-situated, board-certified family law attorneys. Barrett provided sixty-one pages of detailed billing records that show Robertson incurred $107,321 in fees for his services. The billing records detail the individual legal service or support task performed, the time it took to perform the task rounded to the nearest tenth of an hour, the person who performed the task, and the fee charged for each task. The entries are redacted to omit names, places, and exact subject matter of the task. According to his billing records, Barrett engaged in trial preparations, made court appearances on Robert's behalf, held meetings, and made communications. Barrett's support staff wrote letters, drafted motions, held conversations and prepared for trial. Barrett's representation spanned at least twenty months. Kogel did not file a counter-affidavit or present other evidence to controvert the reasonableness of Barrett's fees.

Mr. Dyer, who performed other legal services for Robertson in this matter, also filed an affidavit and billing records to support the $22,740 that Dyer charged for his services. Dyer averred that he has been licensed to practice law in Texas since 1961, that he practices exclusively in international family law, that he is familiar with the billing rates for family law attorneys in Travis County, that he charges $350 per hour, and that his fees were "reasonable and necessary" in this case. Dyer's bills reflected that he represented Robertson in court, prepared for and participated in depositions, conducted legal research, monitored the Belgian proceedings, held meetings and had conversations related to the case. Dyer represented Robertson for at least five months and presented three bills. The billing statements itemize the tasks Dyer performed during each billing period and the associated legal fees. Although the bills do not indicate how many hours were spent on each

15

legal task, dividing each bills' total fee by Dyer's $350 hourly rate yields the total hours it took Dyer to complete the enumerated legal tasks. Kogel did not present any evidence to controvert the reasonableness of the fees charged by Dyer, nor does she cite legal authority for the proposition that assessing a fee's reasonableness requires that each legal task be recorded with precise time details.

The district court considered all of the evidence when it awarded attorney's fees for Robertson's prosecution of the case. Barrett and Dyer provided clear, direct and uncontroverted evidence of attorney's fees; we consider this evidence true as a matter of law. *Petco Animal Supplies, Inc.*, 144 S.W.3d at 567; *see Knighton*, 856 S.W.2d at 210. Furthermore, Kogel did not file a controverting affidavit challenging the fees nor did she otherwise provide any controverting evidence to the district court. Thus, in the absence of controverting evidence, Barrett's and Dyer's fees affidavit support the district court's award of attorney's fees. *See Moody Nat'l. Bank*, 946 S.W.2d at 525. Although all of the *Andersen* factors are not contained in each affidavit, we hold that the district court had evidence in the form of uncontroverted affidavits upon which to base its decision, and we cannot say that the award was so arbitrary or unreasonable as to require reversal. *See Columbia Rio Grande Reg'l Hosp. v. Stover*, 17 S.W.3d 387, 397 (Tex. App.—Corpus Christi 2000, no pet.). We overrule Kogel's third issue.

**Attorney's Fees as Child Support**

In her fourth issue, Kogel contends that the district court erred by characterizing the attorney's fees as "in the nature of child support." We agree and modify the district court's order to delete all characterizations of attorney's fees as "in the nature of child support" and instead we characterize the awards as debts.

16

The Texas Constitution provides that no person shall be imprisoned for debt. Tex. Const. art. 1, § 18. Although an order requiring payment of debt may be enforced through legal processes, a confinement order premised on a failure to pay a debt is void. *In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005). A person may be confined under a court's contempt powers for failure to pay child support because the obligation to support a child is considered a *legal duty* and not a debt. *Id*. With the exception of child support enforcement actions, Texas law holds that attorney's fees may only be awarded as costs enforceable as debt. *Finley v. May*, 154 S.W.3d 196, 199 (Tex. App.—Austin 2004, no pet.); *see* Tex. Fam. Code Ann. §§ 106.002, 157.167 (West Supp. 2004-05). Attorney's fees incurred to enforce a child support order can be characterized as child support. *See Finley*, 154 S.W.3d at 199. The legislature distinguishes between the assessment of fees and costs in enforcement actions and modification suits because of the potentially serious consequences that stem from an award of fees as child support. *Id*.

In its child enforcement order, the district court awarded Robertson attorney's fees and characterized the entire award as "in the nature of child support." The awards for Barrett's and Dyer's fees include both fees incurred to enforce the child support order, which may be properly characterized as "in the nature of child support," and fees incurred in the modification suit, which may only be awarded as costs enforceable as debt. *See* Tex. Fam. Code Ann. §§ 106.002, 157.167. Neither the district court's order, nor the evidence in the record segregate fees incurred to enforce child support from those incurred to modify the custody and possession order, which are only enforceable as debt. Thus, should Kogel fail to pay both awards in full, she is subject to fine or confinement for failure to pay child support. *See Finley*, 154 S.W.3d at 199.

17

We hold that the district court's award of attorney's fees incorrectly characterizes a portion of each fee award as "in the nature of child support," and impermissibly subjects Kogel to fine or confinement for failure to pay a debt. *See* Tex. Const. art. 1, § 18. Because we cannot distinguish which portion of the fees are "child support" and which are "debt," we reform the district court's order by deleting the characterization of the awards as "in the nature of child support." *See* Tex. R. App. P. 43.2(c). The awards are only enforceable as debts.

**Contempt Issues**

In her fifth issue, Kogel challenges the contempt order the district court entered as an abuse of discretion and asserts that the order denies Kogel due process of law. In its child support enforcement order, the district court found Kogel in contempt of the SAPCR final court order because she failed to surrender C. R. The district court sentenced Kogel to 180 days in jail but suspended the sentence on the condition that Kogel comply with the provisions of the modification and child support enforcement orders for two years. The terms of the enforcement order require Kogel to pay Robertson back child support, refrain from removing C. R. from Texas, pay Robertson for Barrett's and Dyer's attorney's fees, and pay for half of the ad litem's attorney's fees.[3] If Kogel

---

[3] In her brief, Kogel states, "It was improper for the trial court to order [Kogel] to pay the [ad litem's] attorney's fees, especially considering that the suspension of commitment for contempt of court requires [Kogel] to 'comply with all provisions of this order for a period of two (2) years . . . .'" Kogel seems to imply that it is improper to characterize the ad litem's fees as "child support." The enforcement order characterizes the ad litem's fees as a debt and we find no evidence in the record that suggests otherwise. Kogel also implies that the award itself is improper. She does not offer authority or argument to support this contention and has not preserved this issue for review. *See* Tex. R. App. P. 33.1, 38.1(h).

18

fails to comply, the district court can revoke the suspension of her contempt sentence. Kogel asserts that the enforcement order is unconstitutional because under its terms, Kogel could be confined for not paying her debts, the attorney's fees awards. *See* Tex. Const. art. 1, § 18.

Contempt orders, even when combined with an appealable order, are unappealable by direct appeal. *Cadle Co. v. Lobingier*, 50 S.W.3d 662, 671 (Tex. App.—Fort Worth 2001, pet. denied). A contempt order is subject to review by petition for writ of habeas corpus or a petition for writ of mandamus. *Id.* A writ of habeas corpus will issue if the district court's contempt order is void, either because it is beyond the court's power or because the relator has not been afforded due process. *In re Henry*, 154 S.W.3d at 596.

Kogel cannot petition for habeas review because she has not been confined. *See id.* Thus, Kogel must petition for review through a writ of mandamus. *See id.* Mandamus relief requires a showing of no adequate remedy by appeal and a clear abuse of discretion. *See Walker v. Packer*, 827 S.W.2d 833, 840-41 (Tex. 1992). Mandamus is not issued as a matter of right but at the discretion of the court. *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993). Kogel's request for mandamus is overruled.[4]

---

[4] We note that Kogel's underlying argument is flawed. Kogel was held in contempt for disobeying a court order and was sentenced to confinement as punishment. The district court suspended the sentence conditioned on Kogel's compliance with all terms of the child support enforcement order. If Kogel fails to comply with the terms of the enforcement order, the earlier sentence will be reinstated. One term of the enforcement order is payment of the attorney's fees. Should Kogel fail to pay the attorney's fees, the suspension will be lifted and she will be jailed, not for failure to pay a debt, but for the earlier contempt of a court order.

## CONCLUSION

We overrule Kogel's first, second, third and fifth issues. We modify the district court's enforcement order to remove language that characterizes the attorney's fees award as enforceable "in the nature of child support" and, as modified, affirm the order of the district court.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Modified and, as Modified, Affirmed

Filed:   August 19, 2005