# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00451-CV

**Flora J. Mireles, Appellant**

**v.**

**Danny Morman, Appellee**

## FROM THE COUNTY COURT AT LAW NO. 4 OF WILLIAMSON COUNTY
## NO. 08-1486-CC4, HONORABLE JOHN MCMASTER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In a dispute regarding ownership of a puppy, Flora J. Mireles appeals from a final summary judgment awarding Danny Morman $6,800 in damages and $3,500 in attorney's fees. Following a storm in Williamson County, several of appellee Danny Morman's Bullmastiff puppies escaped. Appellant Flora J. Mireles found one of the puppies and gave it to her young son. When she was eventually confronted by Morman, Mireles refused to return the puppy, and Morman filed suit alleging conversion and ultimately requesting return of the puppy, damages, and attorney's fees. The trial court granted summary judgment, requiring Mireles to either pay $800 for the puppy or to return the puppy. Including that $800, the trial court awarded damages to Morman in a total amount of $6,800, plus $3,500 in attorney's fees. Mireles appeals, asserting on multiple grounds that summary judgment was improper. We conclude that the trial court acted within its discretion in refusing to allow Mireles to withdraw deemed admissions and that those admissions conclusively

established Mireles's liability as to conversion. However, because we also conclude that the summary-judgment evidence does not support the damages award, that attorney's fees were unavailable, and that the judgment granted more relief than was sought in Morman's motion, we will reverse the district court's judgment and remand for further proceedings consistent with this opinion.

## BACKGROUND

Appellee Morman raises Bullmastiff puppies. On February 15, 2008, four of Morman's puppies escaped his property when a storm blew open a gate. While Morman soon recovered three of the puppies, the fourth remained missing. About two months after the storm, a neighbor told Morman that she had seen a woman who lived nearby—appellant Mireles—in possession of a Bullmastiff puppy matching the description of Morman's fourth lost puppy.

Upon learning this information, Morman and his wife went to Mireles's house. A confrontation ensued in which Mireles gave conflicting accounts of how she came to be in possession of the puppy. It is undisputed that Mireles and Morman eventually agreed that Mireles would pay $800 to keep the puppy, and Mireles signed a promissory note to that effect. However, after Mireles neither paid the $800 nor returned the puppy, Morman filed suit in the Williamson County Court-at-Law.

In his "Original Petition for Recovery of Dog," Morman alleged that Mireles had converted the puppy and sought judgment that the puppy be returned to him, plus attorney's fees. Mireles, appearing pro se, timely filed a general denial and a "countersuit" for emotional distress damages plus, contingent on the trial court's granting Morman title to the puppy, expenses that Mireles had incurred in caring for the puppy and additional emotional-distress damages. Morman

2

propounded written discovery requests, including requests for admission and interrogatories. Although Mireles eventually responded, she served her responses eight days late.

Thereafter, Morman filed a motion for traditional summary judgment on his conversion claim as well as a claim for "Theft of Property/Trial to Title Right to Property." Regarding the latter claim, Morman's motion addressed each of the elements of theft as defined in the penal code,[1] which are in turn made a basis for civil liability under the Texas Theft Liability Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 134.003(a) (West 2005) ("A person who commits theft is liable for the damages resulting from the theft."), § 134.005 (West 2005) ("[A] person who has sustained damages resulting from theft may recover . . . the amount of actual damages found by the trier of fact and, in addition to actual damages, damages awarded by the trier of fact in a sum not to exceed $1,000," plus court costs and reasonable and necessary attorney's fees.). However, as Morman acknowledges, neither his petition nor his summary-judgment motion explicitly mentioned this statute. In his motion, moreover, Morman prayed not only that Mireles be ordered to return the puppy to him, as he had requested in his petition, but also for "at least $5,800 as actual, special, and consequential damages," "statutory damages of $1,000," attorney's fees, and costs.

In support of his summary-judgment motion, Morman attached Mireles's deemed admissions, his own affidavit (with attachments that included what purported to be the puppy's American Kennel Club papers[2]), and an affidavit from his attorney regarding fees. Mireles filed a

---

[1] *See* Tex. Penal Code Ann. § 31.03(a) & (b) (West Supp. 2008) ("A person commits an offense if he unlawfully appropriates property [i.e., appropriating it without the owner's 'effective consent'] with intent to deprive the owner of property.").

[2] These documents reflect that the puppy's name was "JC's Dora the Explorer."

response, attaching her own evidence, including two incident reports from the Williamson County Sheriff's Office, a witness statement provided by Morman's wife, and an original petition that Morman had previously filed against her in justice court.[3] Morman objected to all of Mireles's summary-judgment evidence on grounds of hearsay.

A hearing was held. The trial court sustained all of Morman's hearsay objections and excluded all of Mireles's summary-judgment evidence. After inquiring whether law enforcement should be involved in the matter and after Mireles began making representations to the court regarding the underlying facts, the court asked that both parties be sworn in. During the ensuing exchange, Mireles acknowledged that during her initial confrontation with the Mormans, she had offered to pay them $800 for the puppy, which they had accepted, and that she subsequently had reneged on the deal.[4] Eventually, the trial court granted summary judgment for Morman, ordering that Mireles surrender possession of the puppy by 5:00 p.m. that day and awarding Morman actual damages of $6,800, $3,500 in trial-level attorney's fees, another $6,000 in contingent appellate attorney's fees, costs, and interest. However, the trial court further ordered that Mireles could keep the puppy if she tendered a cashier's check for $800 to Morman within one week, in which case the amount of actual damages awarded in the judgment would be reduced by $800, to $6,000. Mireles tendered the cashier's check and kept the puppy.

---

[3] Morman had originally filed suit in a Williamson County justice court, seeking injunctive relief for possession of the puppy. The justice court rendered a take-nothing judgment for both parties.

[4] Mireles claimed that she had called Morman again and insisted that she should have to pay only $400 for the puppy after she had heard from neighbors that the other puppies had sold for less than $800. She further justified her actions on the basis that "I had already paid for the dog," claiming that she had purchased the puppy from an unidentified neighborhood boy.

4

Mireles thereafter obtained her current counsel and filed a motion to modify the judgment and for new trial. After these motions were denied by operation of law, Mireles appealed.

## ANALYSIS

Mireles brings five issues on appeal. Her primary argument, the subject of her first two issues, is that the trial court should have awarded no more than $800 in damages, a sum that, Mireles contends, represents the market value of the lost dog, and that any additional damages or attorney's-fee award was error. Based on these arguments, and in a professed desire to bring this litigation to an efficient conclusion, Mireles asks us to modify the trial court's judgment to award Morman only $800 (an amount she has already paid to Morman in return for the puppy).

In the alternative, Mireles argues that the trial court's judgment should be reversed in its entirety and the case remanded for further proceedings. In her third issue, Mireles urges that the trial court should have permitted her to withdraw her deemed admissions. In her fourth issue, she complains that the trial court "should not have sworn in a pro se litigant and taken live testimony at a summary-judgment hearing." In Mireles's fifth issue, she argues that Morman failed to meet his summary-judgment burden. Finally, in her sixth issue, Mireles contends that the trial court erred in rendering a final judgment when Morman's motion did not address her counterclaims.

### Standard of review

We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). As the movant on a traditional summary-judgment motion on

5

his affirmative claims, Morman had the initial burden of establishing his entitlement to judgment as a matter of law by conclusively establishing each element of each of his causes of action. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). Only if Morman met this burden would the burden shift to Mireles to raise a genuine issue of material fact precluding summary judgment. *See id.*

When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co.*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215. Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

**Deemed admissions**

As we explain below, the premise underlying Mireles's first issue—that the judgment affording Mireles the option of paying Morman $800 for the puppy represents a judicial determination of the puppy's market value—is ultimately flawed. Consequently, we will begin with Mireles's alternative issues challenging Morman's entitlement to summary judgment as to liability. In her third issue, Mireles argues that the summary judgment should be vacated because it is based solely on her deemed admissions as a pro se defendant. According to Mireles, the trial court had the power to—and should have—either allowed Mireles to withdraw her deemed responses or accepted Mireles's late-filed responses.

6

In addressing this issue, both parties rely on *Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005). In *Wheeler*, the Supreme Court reversed a summary judgment based entirely on a pro se defendant's deemed admissions. As a result of the summary judgment, Wheeler, the pro se defendant, was terminated as joint managing conservator of her daughter, and Green, the plaintiff, was made sole managing conservator. *Id.* at 441. Wheeler had served answers to Green's requests for admissions, but application of the mailbox rule made her response two days late. *Id.* The trial court granted Green's summary judgment based on the deemed admissions and denied Wheeler's motion for new trial, in which she argued that her responses to the deemed admissions were, in fact, timely. *Id.* at 441-42. The court of appeals affirmed, and the Supreme Court reversed, holding that Wheeler had shown good cause for her late responses in that her motion for new trial showed that Wheeler was mistaken as to when service occurred and, based on Wheeler's motion, "the lower courts could have concluded that [Wheeler] was wrong on her dates and wrong on how to correct them, but not that either was the result of intent of conscious indifference." *Id.* at 442.

Here, although we are confronted with somewhat similar facts and similar due process concerns, we cannot conclude that the trial court abused its discretion in granting summary judgment based on deemed admissions or in denying Mireles's motion for new trial, as Mireles has neither asserted that she had good cause for failing to timely respond to Morman's requests for admissions, nor has she presented any evidence to show good cause. A showing of both good cause and no undue prejudice is required by rule before a trial court may allow a party to withdraw deemed admissions. *See* Tex. R. Civ. P. 198.2; *Wheeler*, 157 S.W.3d at 442. To show good cause, a party must show that his failure to timely respond was due to accident or mistake. Tex. R. Civ. P. 198.2;

7

*Wheeler*, 157 S.W.3d at 442. Mireles has neither shown nor tried to show either accident or mistake in failing to file timely responses.

Our holding on this point is consistent with this Court's recent application of *Wheeler* in *Van Hoose v. Vanderbilt Mortgage and Finance, Inc.*, No. 03-08-00573-CV, 2009 Tex. App. LEXIS 3136, *6-7 (Tex. App.—Austin May 8, 2009, pet. denied) (mem. op.). In *Van Hoose*, summary judgment was granted against the Van Hooses, pro se defendants, based on deemed admissions. *Id.* at *2. As here, the Van Hooses did not argue that their failure to timely respond to requests for admission was a result of accident or mistake. *Id.* at *7; *see* Tex. R. Civ. P. 198.2; *Wheeler*, 157 S.W.3d at 442. Rather, they stated that their failure to respond was due "'in part,' to Ms. Van Hooses's medical condition, which required her to avoid the stress of court proceedings." *Van Hoose*, 2009 Tex. App. LEXIS 3136, at *7. Accordingly, this Court affirmed the trial court's summary judgment against the Van Hooses. *Id.* For the same reasons, we find no error in the trial court's refusal to allow Mireles to withdraw her deemed in admissions or in the court's consideration of Mireles's deemed admissions as competent summary judgment evidence. We overrule Mireles's third issue.[5]

**Summary judgment**

In her first and fifth issues, Mireles argues that Morman failed to meet his burden of establishing his entitlement to judgment as a matter of law by conclusively establishing both

---

[5] On this issue, however, we make no determination as to whether the deemed admissions were sufficient to support the trial court's judgment. We discuss the sufficiency of the evidence below.

liability and damages. *See M.D. Anderson Hosp. & Tumor Inst.*, 28 S.W.3d at 23. Relatedly, in her first issue, Mireles urges that to the extent Morman is entitled to summary judgment as to liability for conversion, the trial court erred in awarding damages in excess of $800.

The deemed admissions conclusively established each element of Morman's conversion claim, the sole claim asserted in Morman's pleadings. To prove conversion, a plaintiff must show that: (1) he owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Smith v. Maximum Racing, Inc.*, 136 S.W.3d 337, 341 (Tex. App.—Austin 2004, no pet.). Mireles's deemed admissions established each of these elements—that (1) Morman owned the dog; (2) Mireles knew the dog was Morman's and intended to deprive Morman of the dog; (3) Morman demanded the dog be returned, and (4) Mireles refused to return the dog. Because Mireles's deemed admissions conclusively establish each element of liability on Morman's conversion cause of action, summary judgment was proper as to liability.

Morman has also relied on the deemed admissions as conclusive proof of Mireles's liability under the Texas Theft Liability Act. However, as Morman acknowledges, he did not plead such a claim. Morman insists that, nonetheless, the parties tried this claim by consent. Morman observes that his summary-judgment motion addressed each of the elements for recovering under the Act in a section addressed to "Theft of Property;" requested "statutory damages of $1,000," the maximum amount of statutory damages available under the Act; and also sought attorney's fees,

9

a remedy available under the Act and not his conversion claim. Morman also points to a statement by his counsel during the summary-judgment hearing indicating that Morman was requesting $6,800 in damages, an amount that "includes the statutory penalty under the Theft Act."

We cannot agree with Morman that the issue was tried by consent at the summary-judgment hearing. The sole mention of the theft liability act was a statement by Morman's counsel at the conclusion of the hearing that Morman was requesting $6,800 in damages, an amount that "includes the statutory penalty under the Theft Act." When Morman's counsel made this statement, Mireles, who appeared pro se at the hearing, repeatedly attempted to seek clarification, despite the trial court's admonishments to her for "interrupting." Specifically, as to this theft allegation, Mireles protested:

> I was never told in these documents that it was theft. I was under the impression that I had obtained this dog—

At this juncture, the trial court interjected:

> Madam, this is a civil court. Based on the evidence that I've got before me, I think there's a serious question of a violation that's criminal. But that's not what I'm here to hear and that's not before me. And for that, you might be fortunate.
>
> But in regards to what I'm able to do, is I'm able to award damages to him over the fact that you have injured him and maintained dominion over property which did not belong to you, knowing that it did not belong to you. Now, do you have anything relevant to a civil case?

We believe that Mireles's indications that she was unaware of the theft allegation were sufficient to raise her objection to trial on theft allegations that had not been raised in Morman's pleadings. Although the trial court acknowledged Mireles's objection, the court's response indicated that it,

10

like Mireles, was unclear as to exactly what was being pleaded or had been argued. On this record, we cannot say that this issue was tried by consent. *See* Tex. R. Civ. P. 67; *Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771, 780 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (trial by consent requires that evidence on the issue be developed under circumstances indicating that the parties understood the issue was in the case and made no objection). Consequently, Morman was not entitled to summary judgment on his un-pled claim under the Texas Theft Liability Act. Any relief awarded in the judgment must instead rest upon Morman's conversion claim.

As for actual damages, as previously explained, the judgment awarded Morman a principal amount of $6,800, subject to reduction by $800 if Mireles opted to pay Morman that amount for the puppy. As proof of his damages, Morman relies on his affidavit, in which he testified, in pertinent part:

> The dog had a value of $1,000, but can no longer be sold for that amount, as in essence, it is a used dog. The dog is AKC registered and I could have shown the dog in competitions, which would generate monetary awards. I also could have used the dog for breeding purposes, but lost out on this opportunity. As the result of the lost breeding opportunities and inability to show[] the dog, I have been damaged in the amount of $4,800.00.
>
> * * *
>
> I am requesting that the court grant me damages in the amount of $6,800.00 for the loss of use, loss [sic] breeding opportunity, loss of opportunity to show my dog, loss [sic] profits and statutory remedy for Defendant's unauthorized appropriation.

Thus, the amount of actual damages awarded by the trial court corresponded to the total amount of damages that Morman claimed in his affidavit. On appeal, Morman acknowledges that "[o]f the $6,800 awarded, $1,000 was the statutory penalty under the Texas Theft Liability Act." Because we

11

have concluded that Morman was not entitled to summary judgment on such a claim, it was error for the trial court to include in the actual damages award $1,000 in statutory damages under the Act.

Excluding the statutory damages, Morman asserts that his affidavit conclusively established actual damages of $5,800 (a sum corresponding to Morman's claimed $4,800 in "lost breeding opportunities and inability to show[] the dog" plus the $1,000 in market value Morman averred the dog once had). As this Court has recognized, the actual damages that can be awarded for loss of a dog are limited to either: (1) market value, if one can be ascertained, or (2) some "special or pecuniary" economic value to its owner that is derived from the dog's usefulness and services. *Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 560-61 (Tex. App.—Austin 2004, no pet.) (citing *Heiligmann v. Rose*, 16 S.W. 931 (Tex. 1891)). Market value is the amount that would be paid in cash by a willing buyer who desires to buy, but who is not required to buy, to a willing seller who desires to sell, but who does not need to sell. *GJP v. Ghosh*, 251 S.W.3d 854, 888 (Tex. App.—Austin 2008, no pet.). A "special or pecuniary value to the owner" might be an economic value specific to that owner, such as a dog specifically trained to assist someone with a disability.

Mireles argues that Morman's affidavit is incompetent to conclusively establish either market value or special or pecuniary economic value. She adds that by awarding $1,000 for the puppy's market value plus lost profits from breeding and show opportunities, the trial court permitted Morman to double-recover lost economic value that would have been reflected in market value. This double-counting is further compounded by the $800 she paid Morman for the puppy. Mireles reasons that the judgment permitting her to keep the puppy in exchange for

12

paying Morman $800 established the puppy's market value. She asserts that the award of $800 in "market value," plus another $1,000 for diminution in the puppy's market value, plus compensation for lost earnings from dog breeding and shows amounted to double- or triple-counting of economic value that would already have been reflected in the $800 market value she paid Morman for the animal. Additionally, because $800 was the puppy's market value, Mireles argues, any additional damages would have compensated Morman for the puppy's "special or pecuniary" economic value, and constitute an improper duplicative award of both market value and "special or pecuniary" economic value. *See Petco*, 144 S.W.3d at 560-61.

Contrary to Mireles's assertions, the trial court's judgment regarding the $800 payment does not purport to be a determination of the puppy's market value at the time of conversion. The trial court's order merely allowed Mireles to keep the puppy (which had been spayed in the meantime) and to reduce the judgment by $800 if she tendered that amount to Morman.[6] As for any potential double-counting of this amount and the amounts awarded as actual

---

[6] Nor was there any competent summary-judgment evidence that the parties had agreed Mireles could purchase the puppy for that amount—the trial court, again, excluded all of Mireles's summary-judgment evidence (which had included proof of that agreement) and the parties agree that any live testimony by Mireles during the hearing is not competent summary-judgment evidence. *See* Tex. R. Civ. P. 166a(c).

On the other hand, there appears to be no dispute on appeal that the agreement was made. The trial court recognized as much on the record at the hearing:

> You made an original deal with her of $800 for the purchase of that dog, which has now been spayed. I want that dog returned to you unless you get a cashier's check or money order for $800 within the next week.

Yet it remains that this agreement to pay a particular amount for the puppy on the date of the parties' confrontation would not be evidence of the puppy's market value when Mireles began converting

damages, the judgment avoided this by reducing the judgment amount by $800 when Mireles paid Morman for the puppy.

Although Morman testified that the puppy had a market value of $1,000 at the time of conversion, he now argues that the $1,000 does not represent the full market-value. He asserts that he is entitled to an additional $4,800 for lost breeding opportunities. However, as Mireles points out, awarding sums both for the puppy's market value and for its possible future economic value to the owner is a double-recovery. Morman avers that—had the puppy been immediately returned—it would have had a market value of $1,000. In other words, $1,000 would have been the price at which Morman could have sold the puppy, in which case, he would not have been able to use the dog for breeding purposes. On the other hand, if Morman had elected not to sell the puppy, he would not have received $1,000 for its sale but may have been able to use the dog for breeding purposes, which may have yielded $4,800. Allowing recovery on both measures of damages allows Morman to collect both as if he had retained the dog and as if he had sold it. Both are ultimately measures of market value.

As noted, market value—which Morman avers was $1,000 at the time the dog was lost—is the price that would be paid in cash by a willing buyer who desires to buy, but who is not required to buy, to a willing seller who desires to sell, but who does not need to sell. *Ghosh*, 251 S.W.3d at 888. This measure of value accounts for the potential future economic value to the buyer, as well as the economic risk to the buyer. Indeed, in valuing property, Texas courts have long

---

it. Moreover, as previously noted, market value is the price that would be paid in cash by a willing buyer who desires to buy, but who is not required to buy, to a willing seller who desires to sell, but who does not need to sell. *GJP v. Ghosh*, 251 S.W.3d 854, 888 (Tex. App.—Austin 2008, no pet.).

14

held that a fact-finder may consider all factors that a reasonable buyer and seller would consider in their negotiations, including future potential uses of the property, and accompanying risks. *See State v. McCarley*, 247 S.W.3d 323, 325-27 (Tex. App.—Austin 2007, pet. denied).

In addition to double-counting the puppy's market value, Morman's testimony regarding "lost breeding opportunities and inability to show[] the dog" is not competent summary-judgment evidence. The rules of civil procedure provide:

> A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, . . . if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.

Tex. R. Civ. P. 166a(c). Affidavits containing unsubstantiated factual or legal conclusions or subjective beliefs that are not supported by evidence are not competent summary-judgment proof because they are not credible or susceptible to being readily controverted. *See, e.g.*, *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam) (citing Tex. R. Civ. P. 166a(c) & (f)); *Rizkallah v. Conner*, 952 S.W.2d 580, 586-88 (Tex. App.—Houston [1st Dist.] 1997, no writ). Here, Morman provides no factual support for his assertions that he could have realized $4,800 by breeding or showing the dog. To recover lost profits, a plaintiff is required to prove the loss amount by competent evidence with reasonable certainty. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 504 (Tex. 2001). At a minimum, this fact-intensive determination requires that the lost profit opinion or estimate be based on "objective facts, figures, or data from which the lost-profits amount may be ascertained." *Id.* Morman has provided no evidence at all to support his assertion that he suffered $4,800 in lost profits.

15

In sum, there is no competent summary-judgment evidence to support a judgment based on either of Morman's two categories of damages. Compounding the absence of any competent summary-judgment evidence to support these measure of damages, the parties have been inconsistent in their arguments throughout these proceedings as to what each category represents and as to what the true market value of the puppy is or was at any given time. Both parties's arguments indicate a recognition that either the measure of damages represented by each category is unclear or that these two categories of damages at least partially overlap. Based on this record, we conclude that Morman met his summary-judgment burden as to neither measure of damages, and the trial court erred in granting summary judgment awarding Morman $6,800 in actual damages.[7]

**Attorney's fees**

In her second issue, Mireles argues that the trial court erred in awarding Morman attorney's fees because such fees cannot be awarded under his common-law conversion cause of action. The parties agree that the only possible basis for the trial court's award of attorney's fees was the theft liability act. Given our determination that the issue was not properly pleaded and was not tried by consent, we sustain Mireles's second issue.

---

[7] Apparently in further support of the trial court's damage award, Morman mentions a request for admission, through which Mireles is deemed to have admitted that Morman "has incurred damages of at least $7,500." However, summary judgment based on such an admission would be improper, as there is no indication as to whether these $7,500 in damages would be recoverable under *Petco*. *See Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 560-61 (Tex. App.—Austin 2004, no pet.).

**Counterclaims**

In her sixth issue, Mireles argues that the trial court's summary judgment erroneously disposed of her two counterclaims when they were not addressed in Morman's motion. Morman, the defendant as to these claims, was required to conclusively disprove at least one element of each claim to be entitled to summary judgment. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Morman responds that Mireles failed to give fair and adequate notice of the claims she was asserting and, therefore, did not raise causes of action to which Morman was required to respond.

Regardless of how these claims were pleaded, both Morman and the trial court were required to address them before final judgment could be entered. Morman could have filed special exceptions or summary judgment as to these claims, but he did not. Consequently, the trial court's judgment "finally dispos[ing] of all parties and claims," while final, is erroneous in purporting to foreclose Mireles's counterclaims. *See Bandera Elec. Coop. v. Gilchrist*, 946 S.W.2d 336, 337 (Tex. 1997) (per curiam) (reversing portion of purportedly final summary judgment that disposed of counterclaims not addressed by movant). Accordingly, we sustain Mireles's sixth issue.[8]

**Summary-judgment hearing**

In her fourth issue, Mireles argues that the trial court improperly swore in Mireles and took her oral testimony. Rule 166a(c) provides: "No oral testimony shall be received at the hearing." Under this rule, it would be error for the trial court to grant or deny summary judgment

---

[8] We express no opinion, of course, regarding the ultimate viability of the counterclaims Mireles has pled.

17

based upon oral testimony, as opposed to argument and the summary-judgment record. Whether this is what the trial court did or that any such "evidence" probably caused an improper judgment, however, is ultimately irrelevant in light of our ultimate disposition. *See* Tex. R. App. P. 44.1.

## CONCLUSION

We have overruled Mireles's third and fifth issues, concluding that the trial court did not abuse its discretion in refusing to allow Mireles to withdraw the deemed admissions and that these deemed admissions are sufficient to support summary judgment on liability for common-law conversion, as set out in Morman's live pleadings. However, we have sustained Mireles's first, second, and sixth issues and, accordingly, reverse those portions of the court's judgment and remand to the trial court for further proceedings consistent with this opinion. [9]

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton;
    Concurring and Dissenting Opinion by Justice Patterson

Reversed and Remanded

Filed:   August 6, 2010

_____

[9] In light of this disposition, we made no determination as to Mireles's fourth issue.

18